COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| AMANDA ARMENDARIZ, | § | |
| | | No. 08-11-00010-CV |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | County Court at Law No. 5 |
| | § | |
| REDCATS USA, L.P., | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC#2009-3470) |
| | § | |

**O P I N I O N**

In this wrongful discharge case, Amanda Armendariz ("Armendariz") appeals the trial

court's orders granting summary judgment for Redcats USA, LP ("Redcats"), entering final

judgment for Redcats, and denying her motion for new trial. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Armendariz worked as a telemarketer for Redcats for approximately 16 months, from

mid-February 2008 until June 15, 2009. On May 19, 2009, Armendariz informed her supervisor

that she was experiencing pain in her hands. As instructed, Armendariz reported her injury to

human resources. After stretching exercises proved ineffective, Armendariz saw a physician at a

clinic with which Redcats had a contractual relationship. The physician informed Armendariz

that she could continue working, which she did. During this time, Armendariz filed a workers'

compensation claim.

In its employee handbook and in a more-detailed separate written attendance policy,

Redcats stressed the importance of attendance and punctuality and required its employees to

maintain satisfactory attendance as a condition of employment. If an employee was to be absent from or tardy to work, the employee was required to notify his or her department of his or her absence or tardiness before his or her shift began. The written attendance policy provided that attendance infractions included being absent from work, arriving late to work by more than two minutes, and leaving early from work by more than two minutes. Pursuant to the written policy, an attendance infraction was unexcused unless incurred as part of approved leave or if supported by physician's statement. However, the evidence establishes that Redcats also had an unwritten attendance policy known as the "half-day absence rule." Pursuant to this policy, an employee's unscheduled tardiness or partial absence was considered an unexcused attendance infraction, even if supported by a physician's statement.

Redcats evaluates the performance of its employees on a scale of one to four. A performance rating of one indicated that an employee was not meeting expectations, two that an employee was partially meeting expectations, three that an employee was meeting expectations, and four that an employee was exceeding expectations. Pursuant to the written attendance policy, an employee began the calendar year with an attendance rating of four, and every six months the rating cycle began anew. As an employee incurred attendance infractions, his or her rating decreased. An employee with a rating of one faced the possibility of termination.

At the time that she reported her workplace injury, Armendariz had an attendance rating of one and had already received a final written warning from her supervisor that an additional attendance infraction would result in her termination.[1] When, on June 15, 2009, Armendariz

---

[1] Armendariz concedes that she had a history of unsatisfactory attendance and, although unclear and confusing, the record supports her concession. There is evidence that by May 19, 2009, Armendariz had incurred the following unexcused attendance infractions since she had begun working for Redcats: (1) she was absent from work approximately eleven days and partially absent approximately six half days; (2) she was tardy to work on

arrived to work more than three hours late, she was terminated.

Armendariz filed suit for wrongful discharge. In response, Redcats moved for traditional summary judgment pursuant to Rule 166a(c) and no-evidence summary judgment pursuant to Rule 166a(i). Without identifying the basis or bases for granting relief, the trial court granted summary judgment and entered final judgment for Redcats. Armendariz moved for a new trial, but the trial court denied the motion. This appeal followed.

## SUMMARY JUDGMENT STANDARD OF REVIEW

We review a trial court's summary judgment *de novo*. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). When, as here, the trial court does not specify the grounds on which it granted summary judgment, the summary judgment will be affirmed if any of the grounds advanced by the movant is meritorious.[2] *Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *Hernandez v. Am. Tel. & Tel. Co.*, 198 S.W.3d 288, 291 (Tex.App.--El Paso 2006, no pet.).

In conducting our no-evidence summary-judgment review, we "review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors

---

approximately eleven separate occasions; and (3) she left work early on approximately three separate occasions. There is also evidence that by then, she had received two verbal warnings and one written warning about her attendance. When Armendariz received her written warning, she was informed that any additional attendance infractions would result in a final written warning, and that her failure to improve could result in her termination.

Armendariz asserts that her attendance history before she was terminated on June 15, 2009 is immaterial and emphasizes that she stipulated to being on final notice that any additional unexcused attendance infractions would result in her termination. However, not only does Armendariz's attendance history provide necessary context, it is relevant in determining whether Redcats discharged Armendariz based on the neutral application of its attendance policy. *See Hernandez*, 198 S.W.3d at 292-94 (reviewing employee's entire attendance record in determining whether employer's stated reason for firing employee was based on unsatisfactory attendance and not on a discriminatory reason).

[2] We first review the trial court's summary judgment under the no-evidence standard of review. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004).

could, and disregarding contrary evidence unless reasonable jurors could not." *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009), *quoting Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). A genuine issue of material fact exists when more than a scintilla of evidence establishing the existence of the challenged element is produced. *Ford Motor Co.*, 135 S.W.3d at 600. More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). However, less than a scintilla of evidence exists when the evidence is so weak that it does no more than create a surmise or a suspicion of a fact. *Id*. When a non-movant presents more than a scintilla of probative evidence that raises a genuine issue of material fact regarding each challenged element, a no-evidence summary judgment is improper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009). On the other hand, when a non-movant fails to produce more than a scintilla of evidence on an essential element of the claim, the trial court is required to grant the motion. TEX.R.CIV.P. 166a(i); *Ford Motor Co.*, 135 S.W.3d at 600.

A party moving for traditional summary judgment bears the burden of showing that no genuine issue of material fact exists and that she is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c). To determine if the non-movant raised a fact issue, we review the evidence in the light most favorable to the non-movant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *See Fielding*, 289 S.W.3d at 848, *citing City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). A defendant who conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment on that claim. *Frost Nat.*

4

*Bank v. Fernandez*, 315 S.W.3d 494, 508-09 (Tex. 2010).

## WRONGFUL DISCHARGE

The Workers' Compensation Act (Act) prohibits an employer from discharging or discriminating against an employee simply because the employee has filed a workers' compensation claim in good faith.   TEX.LAB.CODE ANN. § 451.001 (West 2006); *Hernandez*, 198 S.W.3d at 291.   An employee bears the burden to prove that she was discharged in retaliation for filing a workers' compensation claim. TEX.LAB.CODE ANN. § 451.002(b); *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Hernandez*, 198 S.W.3d at 291.   An employee satisfies her burden of proof by establishing that she would not have been discharged "but for" the filing of the workers' compensation claim.  *Id.*   If the employee is successful in establishing a causal link between her discharge and the filing of her workers' compensation claim, the burden shifts to the employer to establish that its decision to terminate the employee was based upon the neutral application of a non-discriminatory legitimate business policy. *Hernandez*, 198 S.W.3d at 291.   If the employer is successful in doing so, the burden shifts back to the employee to produce controverting evidence of a retaliatory motive.  *Id*.   An employee may meet her burden of producing such controverting evidence by either:   (1) presenting evidence raising a fact issue on whether the employer's stated reason was a pretext for a retaliatory action; or (2) challenging the employer's summary judgment evidence as failing to prove as a matter of law that the stated reason was legitimate and non-discriminatory.  *Id*.

### *Causal Link*

In establishing a causal link between her discharge and her workers' compensation claim, an employee may rely either on direct or circumstantial evidence.  *Hernandez*, 198 S.W.3d at 291.

5

With regard to circumstantial evidence, the Supreme Court has identified five factors that, if proven by the employee, are considered evidence of such a causal link. *Cont'l Coffee*, 937 S.W.2d at 450-51. These five factors, known as the *Continental Coffee* factors, are: (1) knowledge of the compensation claim by those making the decision to terminate; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the discharge was false. *Cont'l Coffee Prods. Co. v. Cazarez*, 903 S.W.2d 70, 77 (Tex.App--Houston [14th Dist.] 1995), *aff'd in part and rev'd in part on other grounds*; 937 S.W.2d 444 (Tex. 1996); *Hernandez*, 198 S.W.3d at 291.

On appeal, Armendariz argues that she produced evidence sufficient to meet her prima facie burden of establishing a causal link between her discharge and her workers' compensation claim. Specifically, she contends that she did so by producing circumstantial evidence, as required by *Continental Coffee*, that: (1) the supervisor who fired her knew about her workers' compensation claim; and (2) Redcats failed to adhere to its established company policy when it fired her.[3] On the other hand, Redcats argues that Armendariz failed to establish a causal link between her discharge and her workers' compensation claim. Specifically, Redcats contends that Armendariz did not produce any circumstantial evidence, as required by *Continental Coffee*, that: (1) Redcats personnel expressed a negative attitude toward Armendariz's injured condition; (2) Redcats failed to adhere to its established company policy when it fired her; and (3) Redcats treated an employee similarly situated to her differently than it treated her.

---

[3] Armendariz also relies on the "temporal proximity" between her injury and her discharge – approximately one month – as circumstantial evidence of a retaliatory motive behind her discharge. However, temporal proximity is not a *Continental Coffee* factor and, standing alone, is insufficient to establish a causal link. *Hernandez*, 198 S.W.3d at 293-94.

In her reply brief, Armendariz maintains that she was not required to have produced evidence on all five of the *Continental Coffee* factors to have met her burden in establishing a causal link between her discharge and workplace injury. We agree. However, to meet her burden under *Continental Coffee*, Armendariz was required to have produced sufficient circumstantial evidence on a majority of these factors. *See Aust v. Conroe Indep. Sch. Dist.*, 153 S.W.3d 222, 229 (Tex.App.--Beaumont 2004, no pet.)(citing to *Continental Coffee* in support of the appeals court's conclusion that the appellant had established a causal link between his discharge and his injury by "present[ing] circumstantial evidence on most of [the] *Continental Coffee* factors.").

### 1. Knowledge of the Compensation Claim

In its brief, Redcats concedes that Armendariz's supervisor knew that Armendariz had a workplace injury when he made the decision to terminate her employment. The record establishes that not only did Armendariz testify to her supervisor having such knowledge, but her supervisor testified to his own knowledge of Armendariz's injury. Accordingly, Armendariz produced more than a scintilla of evidence that her supervisor knew she was injured when she was fired.

### 2. Negative Attitude

As it did in its motion for summary judgment, Redcats asserts, on appeal, that Armendariz failed to produce any evidence that Redcats's personnel expressed a negative attitude toward her injured condition. Armendariz did not address this factor in her response to the motion for summary judgment, nor does she now address it on appeal. The record establishes that Armendariz herself testified that no Redcats employee did or said anything to discourage her from

7

reporting her injury or from filing a workers' compensation claim.   Accordingly, there is no evidence that Redcats personnel exhibited a negative attitude toward Armendariz's injured condition.

### 3.   Similarly Situated Employees

Again, as it did in its motion for summary judgment, Redcats asserts, on appeal, that Armendariz failed to produce any evidence that Redcats treated a similarly situated employee more favorably than it treated her.   Armendariz did not address this factor in her response to the motion for summary judgment, nor does she now address it on appeal.   The record establishes that Armendariz herself testified that she was unaware:   (1) of any other injured employee; (2) of any other employee who filed a workers' compensation claim; (3) of any other employee returning to work and continuing to work after the employee reported an injury and filed a workers' compensation claim; or (4) of any employee that she believed was fired for filing a workers' compensation claim.   Accordingly, there is no evidence that Redcats treated an employee similarly situated to Armendariz more favorably that it treated her.

### 4.   Stated Reason is False

On appeal, neither party addresses whether there is any evidence that the stated reason for Armendariz's discharge was false.   In its motion for summary judgment, Redcats did not raise a no-evidence ground challenging this factor.   Rather, Redcats addressed this factor pursuant to its discussion of why it was entitled to summary judgment on traditional grounds.   Redcats asserted that Armendariz's belief that she was discharged not because of her attendance but because she sought a second opinion on her injury was not only subjective, but also belied by her own testimony that Redcats did not discourage her from seeking a second opinion.   Rather Redcats

8

informed her that the company's insurance might not pay for the costs of a second opinion. Armendariz fails to address, much less rebut, Redcats's assertion in her response to the motion for summary judgment. Pursuant to *Continental Coffee*, Armendariz, as the plaintiff, bore the burden to prove that Redcats's stated reason for discharging Armendariz because of inadequate attendance was false. 937 S.W.2d at 450-51. Because she has failed to carry her burden and the record is silent as to this factor, we can only conclude that there is no evidence that Redcats's reason for discharging Armendariz was false.

## 5. Failure to Adhere to Policies

Armendariz argues, on appeal, that she raised a genuine issue of material fact that Redcats failed to adhere to established company policy because the "half-day absence rule" that Redcats relied upon to terminate Armendariz for arriving late to work on June 15, 2009 did not exist. However, the evidence established that, Redcats had an unwritten attendance policy – the "half-day absence rule" – that provided that an employee's unscheduled tardiness to or partial absence from work was considered an unexcused attendance infraction, even if supported by a physician's statement.[4] The existence of the rule was established by the testimony of Redcats personnel responsible for implementing and administering the company's attendance policy. Here, there is no dispute that, on June 15, 2009, Armendariz was tardy to work by more than three hours. By then, Armendariz had been operating on a final written warning from her supervisor who had previously informed her that an additional attendance infraction would result in her termination. Armendariz testified that she was tardy to work because she had gone to a health

---

[4] As illogical and injudicious as it sounds, an ill Redcats employee would be better off being absent for a full day, rather than a partial day, because absence for the whole day attributable to illness would be excused, so long as supported by a physician's statement, whereas tardiness or absence for a partial day, regardless of a physician's statement, was unexcused. We do not address the efficacy of having such an "unwritten" policy or whether such a policy is constitutes a reasonable employment practice.

9

clinic that morning after suffering intense menstrual bleeding that was so severe that she passed out in her bathroom. Regardless of the reason for her tardiness, Armendariz violated the company's "half-day absence rule," and her tardiness was therefore unexcused.

Armendariz argues that, even if such a rule existed, it was inapplicable in her case because her tardiness was due to a health emergency, which she maintains was not considered an unexcused absence under Redcats's attendance policy. In support of her argument, Armendariz refers us to the testimony of the supervisor who discharged her that, in some cases, an emergency might constitute an excused absence. However, the supervisor never testified as to whether a partial-day absence due to a medical emergency might be excused. Moreover, Armendariz herself testified that she never had any discussions with her supervisor about such a scenario. Even when viewed in the light most favorable to Armendariz, this evidence does no more than support a mere suspicion or surmise that Redcats did not adhere to the "half-day absence rule" when discharging Armendariz for her tardiness. As such, it does not rise to a scintilla of evidence, and is therefore equivalent to no-evidence. Accordingly, Armendariz has presented no evidence that Redcats failed to adhere to its company policies when discharging her.

Armendariz failed to produce circumstantial evidence on the majority of the *Continental Coffee* factors. While Armendariz produced more than a scintilla of evidence that her supervisor knew she had filed a workers' compensation claim when he fired her, she failed to produce more than a scintilla of evidence as to any of the other four factors. Armendariz thus failed to produce evidence raising a genuine issue of material fact that a causal link existed between her discharge and her workers' compensation claim. Because she failed to do so, Armendariz did not satisfy her burden of establishing the causal link between her discharge and her workers' compensation

10

claim.   Accordingly, we need not address whether Redcats terminated Armendariz based on the neutral application of a non-discriminatory legitimate business policy.   *See Hernandez*, 198 S.W.3d at 291.

Because we have concluded that Armendariz failed to produce evidence raising a genuine issue of material fact as to at least one element of her claim – that a causal link existed between her discharge and her workers' compensation claim – we hold that the trial court properly granted Redcats's no-evidence summary judgment.   Moreover, because Armendariz failed to produce more than a scintilla of evidence under the standards of Rule 166a(i), there is no need for us to analyze whether her summary-judgment proof satisfied the less stringent burden set forth for traditional summary judgment under Rule 166a(c).   TEX.R.CIV.P. 166a(c) & (i); *East Hill Marine, Inc. v. Rinker Boat Co., Inc.*, 229 S.W.3d 813, 816 (Tex.App.--Fort Worth 2007, pet. denied).   Issue One is overruled.

## NEW TRIAL

In her second issue, Armendariz argues that the trial court erred by denying her motion for new trial because she produced newly-discovered evidence sufficient to raise a genuine issue of material fact as to whether the "half-day" policy actually existed and whether Redcats adhered to established company policy when terminating her.   We disagree.

Rule 320 of the Texas Rules of Civil Procedure provides, in part, that:   "New trials may be granted and judgment set aside for good cause, on motion or on the court's own motion on such terms as the court shall direct."   TEX.R.CIV.P. 320.   To obtain a new trial based upon newly-discovered evidence, a movant must show that:   (1) new evidence has been discovered since trial; (2) the failure to discover the evidence prior to trial was not because of lack of due

11

diligence; (3) the evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the evidence is so material that it probably would produce a different result if a new trial were granted. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex. 1983), *overruled on other grounds by Moritz v. Preiss*, 121 S.W.3d 715 (Tex. 2003). Whether a motion for new trial based on newly-discovered evidence will be granted or refused generally is a matter left to the sound discretion of the trial court. *Jackson*, 660 S.W.2d at 809. Accordingly, we review a trial court's failure to grant a motion for new trial for an abuse of discretion and indulge every reasonable presumption in favor of upholding the order. *Id*. at 809-10.

Contrary to Armendariz's assertion, the newly-discovered evidence did not raise a genuine fact issue about Redcats's purported failure to adhere to established company policy when terminating her. The newly-discovered evidence that Armendariz relied upon was an affidavit from a former Redcats's employee stating that, when Armendariz was fired, there never was a "half-day" or "full-day" policy in effect. According to the affiant, the actual policy in place then was that an attendance infraction, whether based on absence or tardiness, was excused if supported by a physician's statement. The obvious purpose of the affidavit is to impeach the testimony of Redcats's personnel that Armendariz was discharged because she violated the company's "half-day absence rule." However, because the affidavit merely impeaches, it is not new evidence for purposes of a new trial and is insufficient to warrant a new trial. *Jackson*, 660 S.W.2d at 809; *Meinen v. Muesse*, 72 S.W.2d 931, 932 (Tex.Civ.App.--Austin 1934, no writ); *see Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 132 (Tex.App.--Waco 2005, pet. denied)(newly discovered evidence alleging that a witness committed perjury was cumulative, impeaching, and not grounds for a new trial).

12

Armendariz asserts that the affidavit "stands in stark contrast to the testimony of [the Redcats personnel]" and "went beyond mere impeachment" of their testimony. Evidence impeaching a witness that is so strong and convincing and has such probative force showing a state of facts differing from that to which the witness sought to be impeached testified may warrant a new trial. *Beeks v. Odom*, 70 Tex. 183, 187-89, 7 S.W. 702, 704-05 (1888); *Huggins v. Carey*, 108 Tex. 358, 363-64, 194 S.W. 133, 135-36 (1917); *Houston & T.C. Ry. Co. v. Forsyth*, 49 Tex. 171, 178, 1878 WL 9156, *4-5 (1878); *Meinen*, 72 S.W.2d at 932. However, the evidence here does not lend itself to such characterization. The affidavit, in and of itself, does not rise beyond mere impeachment such that it establishes the lack of a "half-day" or "full-day" attendance policy. It is simply cumulative impeachment evidence. Further, the evidence was not so material that it would probably produce a different result if a new trial were granted. *See Jackson*, 660 S.W.2d at 809.

We conclude that the trial court did not abuse its discretion by refusing to grant a new trial based on newly-discovered evidence. Armendariz's second issue is overruled.

**CONCLUSION**

Having overruled both of Armendariz's issues, we affirm the trial court's orders granting summary judgment for Redcats, entering final judgment for Redcats, and denying Armendariz's motion for new trial.

June 20, 2012

CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.