**Opinion issued December 5, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00200-CV

————————————

## IN RE CITY OF HOUSTON, Relator

---

## Original Proceeding on Petition for Writ of Mandamus

---

### O P I N I O N

Relator, the City of Houston, has petitioned this court for a writ of mandamus, seeking review of the trial court's order granting a new trial.[*] After the trial court's ruling, the Supreme Court of Texas decided *In re Toyota Motor Sales, U.S.A., Inc.*, which announced that a trial court's legally appropriate and

---

[*] The underlying case is *LaShonda Rochelle v. City of Houston*, cause number 2011-01184, consolidated with *Mattie Etubom v. City of Houston*, cause number 2011-13741, pending in the 269th District Court of Harris County, Texas, the Honorable Dan Hinde presiding.

reasonably specific order granting a new trial may be reviewed on its substantive merits in a mandamus proceeding. 407 S.W.3d 746, 758–59 (Tex. 2013). Applying that standard of review to this case, we conditionally grant relief.

**Background**

On the night of May 1, 2009, plaintiff LaShonda Rochelle turned left in front of a Houston Police Department patrol car driven by Officer K. Parker while he was on duty and responding to a report of a suspected drunk driver. Plaintiff Mattie Etubom was a passenger in Rochelle's vehicle. Officer Parker's vehicle hit Rochelle's vehicle at approximately 60 miles per hour, and both Rochelle and Etubom sustained injuries.

Approximately one month after the accident, but before any suit had been filed, attorneys representing Rochelle and Etubom sent a letter to the City's Public Affairs Division, requesting that the City preserve a variety of evidence, specifically including the patrol car involved in the collision, all "components" of the car or items removed from it, and all "[a]ccident reports, notations, measurements, reports, reconstruction evaluations and any and all documentation regarding the collision making the basis of [plaintiffs'] claim." Despite this request, several pieces of evidence were lost or destroyed. The patrol car itself was destroyed when the HPD bomb squad detonated a bomb inside of it as part of a training exercise, approximately one year after the collision. In addition, the City

2

lost, destroyed, or was otherwise unable to produce either the police call slip showing the call to which Officer Parker was responding at the time of the collision or the Mobile Data Terminal from his patrol car.

Rochelle and Etubom brought separate suits against the City of Houston, which the trial court consolidated. Before trial, Etubom moved for a jury instruction regarding spoliation of evidence, which the trial court granted over the City's opposition. At trial, counsel for the City asked R. White, an HPD officer and accident investigator, to identify who was at fault in the collision. Officer White testified that he had found Rochelle to be at fault, and counsel for the City asked, "How so?" In response, Officer White listed several bases for his conclusion and then stated, "And a citation was also issued to Ms. Rochelle." This testimony violated an order in limine prohibiting mention of any citation that Rochelle received in connection with the collision. Counsel for Rochelle immediately objected, moved to strike the testimony, and moved for a mistrial. The trial court sustained the objection and granted the motion to strike. After a bench conference, the trial court instructed the members of the jury to disregard any testimony regarding tickets or citations, and it admonished them that it was their responsibility, not the responsibility of any witness, to determine who was at fault in causing the collision. The trial court carried the motion for mistrial, and the trial continued to a verdict.

3

The jury found that the City bore 60 percent of the responsibility for the accident and that Rochelle bore the remaining responsibility. Although the jury awarded damages to both plaintiffs, the jury also found that the accident occurred while Officer Parker was performing a discretionary duty, in good faith, and within the scope of his authority, establishing one of the City's affirmative defenses and relieving it of liability.

The City moved for judgment on the verdict, which the plaintiffs opposed. In her response to the City's motion for judgment, Rochelle moved for a new trial. Etubom separately moved for judgment notwithstanding the verdict or, in the alternative, a new trial. The trial court expressly denied the motions for judgment on the verdict, mistrial, and judgment notwithstanding the verdict, but it granted the motions for new trial. The trial court found "that a new trial should be granted for good cause and in the interest of justice pursuant to the Court's authority under Rule 320 of the Texas Rules of Civil Procedure and as otherwise permitted by Texas law." The trial court's order contains two bases for this finding. First, the trial court stated that the City had engaged in repeated misconduct by concealing or destroying evidence and violating the limine order regarding the citation issued to Rochelle. Second, the trial court found that a new trial was necessary in light of newly-discovered evidence, specifically identifying a document in the City's possession that had not been produced and a witness who had not been disclosed.

4

Before the date set for the new trial, the City petitioned this court for a writ of mandamus. At the same time, the City filed a separate motion in this court requesting a stay of the new trial setting, which we granted. The petition for writ of mandamus asks this court to order the trial court to vacate its order of a new trial and enter final judgment on the jury verdict, because the stated bases for the new trial constitute a clear abuse of discretion. In response, real parties in interest Rochelle and Etubom argue that the trial court's order was legally sufficient.

**Analysis**

Mandamus relief is available only when the trial court has committed a clear abuse of discretion for which there is no adequate remedy by appeal. *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 422 (Tex. 2010) (per curiam) (orig. proceeding). A trial court commits a clear abuse of discretion when its action is "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (per curiam) (orig. proceeding). A trial court has no discretion in determining what the law is or in applying the law to the particular facts. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004) (orig. proceeding).

A trial court's order granting a motion for new trial may be reviewed in a mandamus proceeding. *See In re United Scaffolding, Inc.*, 377 S.W.3d 685, 688–89 (Tex. 2012) (orig. proceeding). A trial court abuses its discretion if it fails to

5

give specific reasons for setting aside a jury verdict. *In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 213 (Tex. 2009) (orig. proceeding). Rule 320 of the Texas Rules of Civil Procedure gives trial courts broad discretion in granting new trials, which may be granted for "good cause," or "in the interest of justice." *Id.* at 210, 213; TEX. R. CIV. P. 320. "But that discretion is not limitless." *In re Columbia Med. Ctr.*, 290 S.W.3d at 210.

In *United Scaffolding*, the Supreme Court of Texas set out standards for orders granting new trials, holding:

> a trial court does not abuse its discretion so long as its stated reason for granting a new trial (1) is a reason for which a new trial is legally appropriate (such as a well-defined legal standard or a defect that probably resulted in an improper verdict); and (2) is specific enough to indicate that the trial court did not simply parrot a pro forma template, but rather derived the articulated reasons from the particular facts and circumstances of the case at hand.

377 S.W.3d at 688–89. The Court suggested examples of invalid orders, such as one based on a reason that is not legally valid, or "if the articulated reasons plainly state that the trial court merely substituted its own judgment for the jury's; or that the trial court simply disliked one party's lawyer; or that the reason is based on invidious discrimination." *Id.* at 689 (citations omitted). The Court then proceeded to disapprove an order that stated multiple reasons, each of which was preceded by "and/or" and one of which was "in the interest of justice and fairness," leaving the possibility that the latter, legally insufficient, rationale was the only one

6

supporting the order. *Id.* at 689–90. The trial court in that case was required to enter a new order "and elaborate, with reference to the evidence adduced at trial," why the facts of the trial supported one or more of the permissible rationales stated in the new trial order. *Id.* at 690.

After the trial court granted a new trial in this case, and while the City's mandamus petition was pending in this court, the Supreme Court of Texas issued its opinion in *In re Toyota Motor Sales*. The Court again considered a petition for writ of mandamus arising from a new trial order and resolved the question of "whether an appellate court may, in an original proceeding, determine whether the reasonably specific and legally sound rationale is actually true." *In re Toyota Motor Sales*, 407 S.W.3d at 749. The Court held that when a trial court enters an order for a new trial that facially complies with the requirements of *Columbia Medical Center* and *United Scaffolding*, "an appellate court may conduct a merits-based review of the reasons given." *Id.* at 762. If the articulated reasons are not supported by the law and the record, mandamus relief is appropriate. *Id.* at 761–62.

On its face, the order granting a new trial in this case satisfies the standards articulated in *Columbia Medical Center* and *United Scaffolding*. We will therefore examine each of the trial court's stated reasons for ordering a new trial. If any of the reasons given satisfies the standards set forth in *Toyota Motor Sales*, then the

7

trial court did not abuse its discretion in ordering a new trial and we will deny relief.

## I.    Newly–discovered evidence

The second basis stated by the trial court for ordering a new trial was "material evidence first discovered after trial and brought to the Court's attention by Plaintiff Etubom."   When a party moves for a new trial based upon the existence of newly-discovered evidence, that party has the burden of showing that: (1) the evidence has come to the party's attention since trial; (2) it was not owing to want of due diligence that the evidence did not come to the party's attention sooner; (3) the evidence is not merely cumulative of that already presented and does not tend only to impeach the testimony of the party's adversary; and (4) the evidence would probably produce a different result if a new trial were granted. *Chapman v. Abbott*, 251 S.W.3d 612, 620 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *see also Armendariz v. Redcats USA, L.P.*, 390 S.W.3d 463, 471 (Tex. App.—El Paso 2012, no pet.); *Connell Chevrolet Co., Inc. v. Leak*, 967 S.W.2d 888, 894 (Tex. App.—Austin 1998, no pet.).

The record reveals two purportedly new pieces of evidence.  First, although the City had produced in discovery a copy of HPD General Order 600-01 in effect at the time of the collision, it did not produce a copy of that order as it was amended in 2011.  Second, Etubom asserted that HPD Officer K. Dozier should

have been identified by the City as a person with knowledge of facts relevant to her claim because Officer Dozier gave deposition testimony regarding General Order 600-01 in a different case involving a different collision. Both of these issues were raised for the first time in a supplement to Etubom's motion for judgment notwithstanding the verdict or for new trial.

### A.    HPD General Order 600-01

HPD General Order 600-01 governs response priorities for calls received by the HPD dispatchers. At the time of the collision, General Order 600-01 specified that when an officer responds to a Priority 2 call, "The responding officer will proceed directly to the scene, obey all traffic laws, (unless utilizing red light and siren), and not stop any traffic violators." It is undisputed that the report of a drunk driver to which Officer Parker was responding was a "Priority 2" call. In 2011, the HPD issued a significantly revised version of General Order 600-01. Among other changes, the 2011 revision replaced the aforequoted language with the following:

> When responding to priority . . . two calls for service, with the use of emergency equipment, officers must drive with due regard for the safety of themselves, fellow officers, and citizens. Units are to travel directly to the scene and not stop any traffic violators or other persons for minor offenses.

Thus, among other changes, the 2011 revision omitted the language requiring officers responding to a Priority 2 call either to obey traffic laws or use the patrol vehicle's emergency lights and siren. The trial court found that this revision to

9

General Order 600-01 was not discovered by Etubom until after the close of trial "due to its concealment by the city in discovery," reasoning that the document was properly requested in discovery but the City "improperly failed to produce it." The trial court further found that the document was "highly relevant and probative of the defense of discretionary duty alleged by the City of Houston" and that its production likely would have resulted in a different result at trial.

The plaintiffs had notice that the version of HPD General Order 600-01 in effect in 2009 was not the only version that had ever existed. When Etubom requested production of all current, previous, and subsequent versions of all City of Houston or HPD policies relevant to driving or classification of police calls—a request that expressly anticipated multiple versions of relevant policies—the City objected that the request was "not limited in scope or time," among other reasons. In an amended response to Etubom's request, the City reiterated its objections but also stated that it would produce certain documents, including what it described only as "HPD General Order 600-01," and enclosing the order that was in effect at the time of the accident in 2009. On its face, that version of the order states that it was issued in 1989 and that it superseded a 1987 version of the same order. More importantly there is no indication in the record that the plaintiffs sought a ruling on the City's objections or that they filed a motion to compel a more complete response or production of any other versions of the order, such as the 1987 version

referenced in the version they received. The law is well settled that when a party seeking discovery fails to request a hearing and obtain a ruling on discovery objections, it waives its right to the discovery sought. *E.g.*, *In re City of Houston*, No. 14-12-00861-CV, 2013 WL 85097, at *1 n.2 (Tex. App.—Houston [14th Dist.] Jan. 4, 2013, orig. proceeding) (mem. op.); *Roberts v. Whitfill*, 191 S.W.3d 348, 361 n.3 (Tex. App.—Waco 2006, no pet.); *see also Remington Arms Co. v. Caldwell*, 850 S.W.2d 167, 170 (Tex. 1993) ("the failure to obtain a pretrial ruling on discovery disputes that exist before commencement of trial constitutes a waiver of any claim for sanctions based on that conduct"); *McKinney v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 772 S.W.2d 72, 75 (Tex. 1989) (the "responsibility for obtaining a hearing on discovery matters [is] on the party requesting discovery").

Because the plaintiffs' failure to obtain the document resulted from their failure to pursue rulings on the City's objections to discovery, and therefore constituted a waiver, we conclude that the trial court abused its discretion to the extent it ordered a new trial on the basis of the City's failure to produce the 2011 revision to HPD General Order 600-01.

**B.      Testimony of Officer Dozier**

In its order for new trial, the trial court also identified deposition testimony of Officer K. Dozier as newly-discovered evidence justifying a new trial. Officer Dozier testified in another motor-vehicle-collision case in which he was the

11

responding officer and which the City settled shortly after Rochelle and Etubom proceeded to trial. In his deposition, Officer Dozier testified that the provisions of General Order 600-01 requiring the use of emergency lights and sirens were mandatory in May 2009. Officer Dozier also testified that General Order 600-01 required HPD officers responding to Priority 2 calls to obey the posted speed limit, unless the officer's emergency lights and siren were active. Nothing in the record indicates that Officer Dozier had any special knowledge of HPD General Orders or their proper interpretation as compared to Officers Parker and White. Nevertheless, while the trial court's order does not make any explicit findings about the importance of Officer Dozier's testimony, it states that a new trial was warranted because "[d]espite this testimony, Officer Dozier was not identified by the City of Houston as a person with knowledge of relevant facts in the case." In her motion for new trial, Etubom did not suggest that disclosure of Officer Dozier was required in response to any discovery request. The trial court also referenced no such discovery obligation, other than the implied reference to the disclosure obligation of Rule 194.2(e).

The real parties in interest have not provided any legal authority for the proposition that the discovery of Officer Dozier's testimony could support a new trial. Rule 320 cannot be read so broadly as to allow a new trial any time that two persons with knowledge of a police department policy offer conflicting testimony

about that policy. To hold otherwise would effectively require police departments to disclose every officer as a possible witness in every civil suit in which police policies or procedures are in dispute, regardless of whether that officer has any connection to the underlying facts. Similarly, in suits involving corporate entities, such a rule might require disclosure of every person with knowledge of corporate policies and procedures in cases implicating those policies or procedures. The rules do not permit a new trial simply because one or more unknown or undisclosed persons might disagree as to the existence or interpretation of an organizational policy. *E.g.*, *Armendariz*, 390 S.W.3d at 471–72 (newly-discovered evidence in the form of affidavit from former employee asserting nonexistence of attendance policy under which plaintiff was terminated was insufficient to warrant a new trial, because it merely impeached former employer's witnesses); *see also Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 131 (Tex. App.—Waco 2005, pet. denied) (newly-discovered evidence tending to show commission of perjury did not justify new trial, because it merely tended to impeach witness). To read Rule 320 as permitting a new trial under these circumstances would eviscerate the relevance limitation on discovery obligations, *see* TEX. R. CIV. P. 192, as well as other evidentiary rules intended to limit the scope, expense, and burden of discovery.

In their brief opposing the City's petition for writ of mandamus, Rochelle and Etubom rely upon *Lopez v. La Madeleine of Texas, Inc.*, 200 S.W.3d 854, 861 (Tex. App.—Dallas 2006, no pet.), for the proposition that "the discovery rules requiring the production of documents and identity of witnesses do not allow a party to benefit from its own gamesmanship." *Lopez* involved a party which failed to disclose relevant evidence but later sought to introduce that same evidence for purposes of impeachment. *Id.* at 860–61. The evidence was admitted, and the trial court denied the objecting party's motion for new trial. *Id.* at 856. The court of appeals held that the non-disclosing party was attempting to engage in "gamesmanship." *Id.* at 861. Here, there has been no such attempt to game the system, because the City never sought to use the undisclosed evidence. Unlike the circumstance described in *Lopez*, the undisclosed evidence in this case was discoverable by plaintiffs before trial in the exercise of due diligence.

Because the trial court abused its discretion to the extent it granted a new trial for newly-discovered evidence, we turn to the other rationale given in the new trial order.

## II.    Misconduct by the City

The trial court's first reason for ordering a new trial was alleged misconduct by the City in discovery and at trial. Specifically, the trial court identified the following acts and omissions:

14

(1) the withholding and destruction of the police call slip allegedly showing an emergency call;

(2) the withholding and destruction of the Mobile Data Terminal in the police cruiser and any data contained therein concerning the alleged emergency call;

(3) exploding a bomb in the police cruiser involved in the collision;

(4) improperly withholding other relevant and probative information in the possession of the City of Houston that had been properly requested in discovery [i.e., 2011 revision to General Order 600-01 and the testimony of Officer Dozier]; and

(5) violation of the trial court's order on a motion in limine.

We have already addressed the effect of the non-disclosed information that the trial court considered as newly-discovered evidence, and the record does not support characterization of the City's discovery responses as having been misconduct. We therefore proceed to consider the remaining acts identified in the order.

## A. Spoliation of evidence

The City does not dispute that it was unable to produce the evidence described in the trial court's points 1 through 3. These facts, however, cannot support a new trial. There is no dispute that the call slip, Mobile Data Terminal, and police cruiser would all remain unavailable in a new trial. Further, the trial court gave a proper spoliation instruction: "If a Party fails to produce evidence which is under its control, reasonably available to it, and not reasonably available to the adverse Party, then you may infer that the evidence is unfavorable to the Party who could have produced it but did not." Courts must presume that juries

15

understand and follow the instructions that they are given. *E.g.*, *Salinas v. Salinas*, 365 S.W.3d 318, 320 (Tex. 2012). There is therefore nothing to be cured with regard to the spoliation of evidence by conducting a new trial in these circumstances.

Indeed, a new trial under these circumstances would constitute little more than a post-trial sanction for discovery abuses that occurred and were known to the plaintiffs before trial. Plaintiffs waived any claim to such sanctions—beyond the spoliation instruction—by failing to request them before trial and obtain a ruling. *Remington Arms*, 850 S.W.2d at 170. The trial court thus abused its discretion in ordering a new trial to the extent it did so on the basis of spoliated evidence.

## B.   Violation of limine order

The final basis that the trial court gave for ordering a new trial was Officer White's violation of the trial court's limine order, prohibiting any mention of the citation issued to Rochelle. The record reflects that this testimony was not directly elicited by the City. Rather, after Officer White testified that he determined that Rochelle was at fault for the accident, he was asked, "How so?" In response he identified "the totality of the circumstances," witness statements, and the citation as the bases for his determination. The trial court promptly sustained an objection by Rochelle's counsel, granted a motion to strike the testimony, and instructed the jury to disregard the testimony about the citation.

16

When a trial court instructs the jury to disregard evidence offered in violation of a motion in limine, we may review that evidence to determine whether an instruction to disregard was adequate to cure its admission. *See Dyer v. Cotton*, 333 S.W.3d 703, 715 (Tex. App.—Houston [1st Dist.] 2010, no pet.). A new trial may be justified if the impact of the improper testimony was incurable by the trial court's instructions. *Dove v. Dir., State Emps. Workers' Comp. Div.*, 857 S.W.2d 577, 580 (Tex. App.—Houston [1st Dist.] 1993, writ denied). "Violations of an order on a motion in limine are incurable if instructions to the jury would not eliminate the danger of prejudice." *Id.* (citing *Dennis v. Hulse*, 362 S.W.2d 308, 309 (Tex. 1962)).

On this record, the violation of the limine order ultimately was harmless insofar as it respected a matter unrelated to the successful affirmative defense. "The good cause for which Rule 320 allows trial courts to grant new trials does not mean just any cause," and "the fact that the right to jury trial is of such significance as to be provided for in both the Federal and State Constitutions counsels against courts setting aside jury verdicts for less than specific, significant, and proper reasons." *In re Columbia Med. Ctr.*, 290 S.W.3d at 210 n.3. In this case, there is no reason to conclude that the instruction actually failed to cure the effect of the improper testimony. The issuance of a citation was relevant only to the issue of who bore responsibility for causing the accident, and the jury found that the City

17

bore the greatest responsibility for the accident despite having heard that Rochelle received a citation. Nevertheless, because the improper testimony had nothing to do with the affirmative defense of "discretionary duty" on which the City prevailed, the testimony ultimately was harmless, even if it had not been disregarded by the jury. Accordingly, we hold that a harmless error cannot constitute "good cause" for granting a new trial. TEX. R. CIV. P. 320; *see In re Columbia Med. Ctr.*, 290 S.W.3d at 210 n.3; *Glasscock v. Bryant*, 185 S.W.2d 595, 600 (Tex. Civ. App.—El Paso 1944, writ ref'd w.o.m.) (Rule 320 "good cause" requires that "the error complained of affected the result or might reasonably have so affected the result"); *cf.* TEX. R. APP. P. 44.1(a).

## III.  Entry of judgment

The City's petition asks us not only to order the trial court to vacate its new trial order but also to order the trial court to enter judgment on the verdict. Such an order may not be appropriate if the trial court does not state its reasons for granting a new trial or if the reasons given are unclear, because there may be legitimate reasons for a new trial that are simply not clear to the appellate court. *E.g.*, *In re United Scaffolding*, 377 S.W.3d at 690 (trial court was not required to enter judgment on the verdict when use of "and/or" and other ambiguities made trial court's reasoning unclear); *In re Columbia Med Ctr.*, 290 S.W.3d at 214 (declining to order judgment on the verdict when trial court had not stated grounds for new

18

trial order). But when the trial court specifies the reasons for a new trial order and those reasons are invalid, judgment on the verdict is proper. *E.g.*, *In re Toyota Motor Sales*, 407 S.W.3d at 762. Because we conclude that ordering a new trial for any of the reasons specified in the trial court's order would constitute an abuse of discretion, we hold that the City is entitled to judgment on the jury's verdict.

Instead of addressing the merits of the mandamus petition, the dissent takes issue with our conclusion that the ultimate relief in this proceeding should echo that specified by the Supreme Court in *In re Toyota Motor Sales*, that is, that the trial court should be instructed to enter judgment on the verdict. In so doing, the dissent criticizes our failure to expand the scope of our mandamus review to analyze the merits of other post-trial motions, particularly the City's motion for entry of judgment on the verdict and the plaintiffs' motions for judgment notwithstanding the verdict. The trial court expressly denied those motions—and our dissenting colleague's suggestion that there is an "absence of a ruling on the merits of these motions from the trial court itself" is simply inaccurate. The trial court's order concluded:

(1) The Motions for Judgment Notwithstanding the Verdict are DENIED;

(2) The Motions for Mistrial are DENIED;

(3) The City of Houston's Motion for Entry of Judgment is DENIED; and

19

    (4)  The Motions for New Trial of Plaintiffs Etubom and Rochelle
          are GRANTED.

MR tab A, at 2-3. No party has challenged those rulings in this original proceeding, nor has any party suggested that the merits of those rulings should be revisited by our court or by the trial court. At oral argument, we raised the possibility that we might find the grounds for new trial identified by the trial court to be legally unsupportable, and we specifically asked plaintiffs' counsel whether there was any other legal argument for a new trial remaining to be addressed by the trial court. Counsel identified none.

Our colleague speculates that the plaintiffs' motions for JNOV could have been denied because they were considered by the trial court to be mooted by the grant of a new trial, as opposed to the merits of the motions. Such conjecture finds no support in the trial court's clear enumeration of its rulings, specifying first that the motions for JNOV were "DENIED" and that the motions for mistrial were "DENIED" before further indicating that the motions for new trial were granted. In response to the suggestion that we have "implicitly" denied the plaintiffs' motions for JNOV on their merits or ruled on any other collateral matter, we specifically disclaim any prejudgment of the merits of any appeal or other proceeding which may raise such issues in the future.

Had the trial court remained silent on the subject of plaintiffs' motions for JNOV, or had it expressly stated the motions were "mooted" rather than ruling that

20

they were "denied," then of course those procedural circumstances would inform the nature of the relief granted by this court. But given that no party has asked us to review the trial court's collateral rulings, and considering that the plaintiffs still have the procedural avenue of a direct appeal in which they can seek review of the denial of the motions for JNOV, we find it appropriate to rule, as the Supreme Court did in *In re Toyota Motor Sales*, that the trial court should "withdraw its order and render judgment on the verdict." 407 S.W.3d at 762.

## Conclusion

We conditionally grant the City's petition for writ of mandamus. We order the trial court to withdraw its order of new trial and enter judgment on the jury verdict. We are confident that the trial court will comply, and the writ will issue only if it does not.

Michael Massengale
Justice

Panel consists of Justices Keyes, Higley, and Massengale.

Justice Keyes, dissenting.

21