

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-18-00847-CV

Joe **MINIHAN** and Sharon Minihan,
Appellants

v.

Martin **O'NEILL**, and Suzanne O'Neill, Individually,
and as Executrix of the Estate of Richard Wayne Bendele,
Appellees

From the 198th Judicial District Court, Bandera County, Texas
Trial Court No. CV-15-0000423
Honorable James L. Rex, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:    Patricia O. Alvarez, Justice
Irene Rios, Justice
Beth Watkins, Justice

Delivered and Filed: January 29, 2020

AFFIRMED

This appeal arises from a dispute between neighbors over the continued shared use of an on-site sewage facility ("OSSF") or, in more common parlance, a septic system. Appellants Joe and Sharon Minihan (collectively, "Minihan") and appellees Martin and Suzanne O'Neill, individually and in her capacity as executrix of the estate of Richard Wayne Bendele (collectively, "O'Neill") filed competing motions for summary judgment. The trial court granted O'Neill's motion and rendered judgment that O'Neill has an express easement appurtenant and an easement by estoppel permitting the continued use of the subject septic system. We affirm.

**Facts**

Alie and Irene Baldridge (collectively, "Baldridge") owned Lot 11, Block 40, of Subdivision D of Avalon Subdivision on Medina Lake in Bandera County, Texas ("Lot 11"). In 1982, Baldridge sold a portion of Lot 11 ("Lot 11-A") to Glenn and Betty Boggs (collectively, "Boggs") and Joe and Sharon Minihan. Baldridge retained the remainder of Lot 11 ("Lot 11-B").[1]

Boggs and Minihan built a house on Lot 11-A and, in June 1982, filed an application for a permit to construct a septic system ("Lot 11 System"). The application identifies the location of the system as Lot 11 (rather than a subpart thereof), states that it is to serve a three-bedroom house, and also states that the size of the septic tank is to be 1,000 gallons. The application shows that it was approved, but the record does not contain a permit for the system. The system was actually constructed using two 550-gallon tanks, both of which are located on Lot 11-A, rather than one 1,000 gallon tank. In addition, an "as constructed" diagram of the Lot 11 System shows that it was built so that the water waste from the house on Lot 11-A flowed into one of the 550-gallon tanks, and the water and waste from a house on Lot 11-B flowed into the other. Both tanks then flowed into a drain field located on both properties. Baldridge paid Minihan $3,000 to use the Lot 11 System.

In 1999, Baldridge and Minihan (who had become sole owner of Lot 11-A by buying Boggs' interest in that property) signed an agreement ("1999 Agreement") certifying that Baldridge had paid a fee for the use of the Lot 11 System, and that joint usage had been continuous since installation, with the parties sharing equally the costs of maintenance, upkeep, and repairs. The 1999 Agreement also states,

> it is agreed that if there are any additions to the property by the current owner, Alie Baldridge, or future owners, requiring any change to the current Septic System,

---

[1]These lots did not have street addresses in 1982. Lot 11-A later became identified as 1564 Elmhurst Drive, and Lot 11-B became identified as 1572 Elmhurst Drive.

these costs will be paid 100% by Alie Baldridge or the new owner of the property. Any normal maintenance expense required will be shared equally.

Two months after signing this agreement, Baldridge sold Lot 11-B to Richard Wayne Bendele, who continued to use the Lot 11 System until his death in February 2015. Appellee Suzanne O'Neill is Bendele's daughter and the executrix of his estate.

Shortly after Bendele's death, Minihan informed O'Neill that he would no longer permit joint use of the Lot 11 System and that he intended to disconnect the connection to Lot 11-B. O'Neill filed claims for declaratory and injunctive relief in both district court and probate court in Bandera County. The probate action was ultimately transferred to the district court and the two cases were consolidated.

In the summer of 2015, while this action was pending, O'Neill and Minihan jointly arranged for an independent inspection of the Lot 11 System. The inspection was performed by a county-approved inspection service and was attended by Minihan, O'Neill, and a county sewage facility inspector. The inspection revealed that the system was functioning properly, despite Minihan's assertions that it was failing and needed to be replaced.

In her live pleading at the time of the summary judgment hearing, O'Neill asked the court to declare the parties' rights and obligations under the 1999 Agreement. She specifically asserted that she was entitled to use the Lot 11 System based on an express easement appurtenant or, in the alternative, an easement by estoppel. In his live pleading, Minihan asserted the affirmative defenses of failure of consideration, fraud, illegality, and license. He also asserted a counterclaim seeking declarations that (1) the 1999 Agreement was revocable; (2) O'Neill cannot seek the benefit of the agreement; and (3) Minihan has no obligation to provide facilities or land for a septic system serving Lot 11-B "in the event the current septic tank and drain field is deemed in violation

of rule, code, ordinance or statute of Bandera County or the State of Texas, or otherwise abandoned."

O'Neill filed a motion for summary judgment on her requested declarations of express easement appurtenant and easement by estoppel. Minihan filed a motion for traditional summary judgment seeking to negate O'Neill's claims, combined with a motion for no-evidence summary judgment alleging that the claim of easement by estoppel fails because there is no evidence of reliance. Minihan did not raise the issue of illegality either in his own motion or in response to O'Neill's motion.

After the trial court announced that it would grant O'Neill's motion, Minihan filed a motion asserting that the court could not grant a final summary judgment because it had not disposed of Minihan's affirmative defense of illegality or its third requested declaration. The court was not persuaded and, on August 10, 2018, it signed a final judgment granting O'Neill's motion for summary judgment and declaring the existence of an express easement appurtenant and an easement by estoppel. The court also awarded O'Neill $45,000 in attorney's fees, plus contingent fees on appeal.

Minihan then filed a motion for new trial, in which he argued that (1) newly-discovered evidence shows that the septic system is illegal, (2) the court's judgment does not dispose of his third requested declaration, and (3) the attorney's fee award is not equitable and just. The trial court denied the motion for new trial following an evidentiary hearing, and Minihan filed this appeal.

**Discussion**

*Standard of review*

We review the granting of summary judgment *de novo*, taking as true all evidence favorable to the nonmovant, and indulging every reasonable inference in the nonmovant's favor. *Provident*

*Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). The burden on the party moving for summary judgment is to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 215-16; TEX. R. CIV. P. 166a(c). When the parties file competing motions for summary judgment and the trial court grants one motion and denies the other, the reviewing court reviews all of the summary judgment evidence, determines all questions presented, and renders the judgment the trial court should have rendered. *S. Crushed Concrete, LLC v. City of Houston*, 398 S.W.3d 676, 678 (Tex. 2013); *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

Appellate courts review a trial court's ruling on a motion for new trial for abuse of discretion. *BZ Tire Shop v. Brite*, 387 S.W.3d 837, 838 (Tex. App.—San Antonio 2012, no pet.); *Cypress-Fairbanks Indep. Sch. Dist. v. Glenn W. Loggins, Inc.*, 115 S.W.3d 67, 73 (Tex. App.—San Antonio 2003, pet. denied). "A trial court abuses its discretion when it acts unreasonably or without regard for any guiding legal principles." *BZ Tire Shop*, 387 S.W.3d at 838.

<u>Summary judgment issues</u>

<u>Express easement</u>

Minihan contends in his fourth issue on appeal that the trial court erred by granting summary judgment on the ground that the 1999 Agreement created an express easement. Minihan argues that the agreement created only a revocable license. We disagree.

"A license is a privilege or authority given to one or retained by one to do some act or acts on the land of another, but which does not amount to an interest in the land itself." *Settegast v. Foley Bros. Dry Goods Co.*, 270 S.W. 1014, 1016 (Tex. 1925); *see H.E.Y. Trust v. Popcorn Express Co., Inc.*, 35 S.W.3d 55, 58 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (license is "a privilege to go on premises for a certain purpose"). An easement, on the other hand, is a nonpossessory interest in property that authorizes its holder to use the property for a particular

purpose. *Lance v. Robinson*, 543 S.W.3d 723, 736 (Tex. 2018); *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002).

An easement appurtenant is one that attaches to the land and passes with it. *Long Island Owner's Ass'n, Inc. v. Davidson*, 965 S.W.2d 674, 684 (Tex. App.—Corpus Christi 1998, pet. denied); *see Killam Ranch Props., Ltd. v. Webb Cty.*, 376 S.W.3d 146, 155 (Tex. App.—San Antonio 2012, pet. denied). It requires a dominant estate, to which the easement is attached, and a servient estate, "which is subject to the use of the dominant estate to the extent of the easement granted or reserved." *Seber v. Union Pac. R.R. Co.*, 350 S.W.3d 640, 646 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (citing *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 207 (Tex. 1962)). An easement appurtenant most commonly "takes the form of a negative easement: the owner of the servient estate simply may not interfere with the right of the owner of the dominant estate to use the servient estate for the purpose of the easement." *Drye*, 364 S.W.2d at 207.

Because express easements are subject to the statute of frauds, the writing creating the easement must demonstrate "the intent of the parties, the essential terms of the easement, and an adequate description of the easement's location." *Cummins v. Travis Cty. Water Control & Improvement Dist. No. 17*, 175 S.W.3d 34, 51 (Tex. App.—Austin 2005, pet. denied). The writing is interpreted according to basic principles of contract construction. *Marcus Cable*, 90 S.W.3d at 700. Thus, the intention of the parties is determined from the language used, as given its plain, ordinary, and generally accepted meaning. *Id.* at 700-01. In addition, the court may consider the circumstances surrounding the creation of the easement to give effect to its purpose. *Id.* at 701. It is not necessary to use the term "easement," or any other particular words, to create an express easement. *See Hubert v. Davis*, 170 S.W.3d 706, 711 (Tex. App.—Tyler 2005, no pet.) (no special form or particular words need be used to create easement) (citing *Maples v. Erck*, 630 S.W.2d 488, 491 (Tex. App.—Corpus Christi 1982, writ ref'd n.r.e.)).

The 1999 Agreement does not use the word "easement," but it contains the elements necessary to create an express easement. It identifies a dominant estate—"Lot 11, Block 40, Division D of Avalon Ranch on Elmhurst Drive, Lakehills, Texas"—and a servient estate—"Lot 11, (part of) Block 40, Division D of Avalon Ranch, Lakehills, Texas." It also identifies the location of the easement as a septic system located on "Lot 11, (part of)." It defines the purpose of the easement as joint usage of the septic system. Finally, it states the essential terms as joint usage of the system, as had been continuous since installation of the system, with both parties sharing equally in the costs of maintenance, upkeep, and repairs.

The parties' intent to create an easement attaching to the land, rather than a license granted to the then-owner of Lot 11-B, is clearly confirmed by the additional provision that, "if there are any additions to [Lot 11-B] by the current owner . . . *or future owners*, requiring any change to the current Septic System, these costs will be paid 100% by [the current owner] *or the new owner* of the property." (Emphasis added.) The cost of normal maintenance would continue to be shared equally.

The 1999 Agreement does not simply permit the then-owner of Lot 11-B "to do some act or acts" on Lot 11-A. *See Settegast*, 270 S.W. at 1016. Rather, it permits the current *and future owners* of Lot 11-B to *use* Lot 11-A for the purpose of accessing and using the septic system located on Lot 11-A. It is undisputed that such usage has entailed running pipes onto Lot 11-A to connect the house on Lot 11-B to the system on Lot 11-A, and draining water waste originating from Lot 11-B into a drain field located on Lot 11-A. We note that other courts have recognized such circumstances as creating easements. *See Holmstrom v. Lee*, 26 S.W.3d 526, 532 (Tex. App.—Austin 2000, no pet.) (easement to use existing water lines and septic drain field); *Engelsbretson v. Hyder*, No. 10-02-00320-CV, 2005 WL 168838, *1 (Tex. App.—Waco Jan. 26, 2005, pet. denied) (addressing whether septic system easement was appurtenant or in gross).

The 1999 Agreement fully satisfies the statute of frauds and conclusively establishes that the parties intended to, and did, create an express easement appurtenant such that the owner of the servient estate (Lot 11-A), whomever that is at the time, may not interfere with the use of the Lot 11 System by the owner of the dominant estate (Lot 11-B), whomever that is at the time. *See Davidson*, 965 S.W.2d at 684 (easement appurtenant passes with land); *Drye*, 364 S.W.2d at 207 (owner of servient estate may not interfere with owner of dominant estate's use of servient estate for purpose of easement).

The trial court did not err by granting summary judgment on the ground that the 1999 Agreement created an express easement appurtenant. Issue number four is overruled.

### *Easement by estoppel*

In issue number five, Minihan asserts that the evidence of easement by estoppel is legally and factually insufficient. However, the trial court granted summary judgment based on both an express easement and an easement by estoppel. Because we have upheld the grant of summary judgment based on the ground of an express easement, we need not address Minihan's issue challenging the alternative ground of an easement by estoppel. *See Knott*, 128 S.W.3d at 216 (providing the appellate court must affirm the summary judgment "if any of the theories presented to the trial court and preserved for appellate review are meritorious."); TEX. R. APP. P. 47.1 (requiring written opinions of the court of appeals to be as brief as practicable while addressing every issue raised and necessary to the final disposition of the appeal).

## *Post-summary judgment issues*

### *Enforcement of an illegal agreement*

In his first issue on appeal, Minihan urges that the trial court erred by rendering judgment for O'Neill based on the 1999 Agreement, and denying his motion for new trial, because that agreement is illegal. More precisely, he contends that the Lot 11 System is illegal and, as a result,

the court cannot enforce an agreement for the continued use of that system. *See Miller v. Long-Bell Lumber Co.*, 222 S.W.2d 244, 246 (Tex. 1949) (courts will not lend their aid to enforce illegal contracts); *Geis v. Colina Del Rio, LP*, 362 S.W.3d 100, 107 (Tex. App.—San Antonio 2011, pet. denied) (same). Minihan raised illegality as an affirmative defense in his answer to O'Neill's counterclaim, but he did not assert illegality in his own summary judgment motion or in response to O'Neill's motion for summary judgment.

"Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal" of a summary judgment. TEX. R. CIV. P. 166a(c). We will therefore not consider illegality as a ground for reversing the grant of summary judgment in this case. We will, however, address the issue in the context of Minihan's motion for new trial and will thus employ the abuse of discretion standard applicable to such motions. *See BZ Tire Shop*, 387 S.W.3d at 838; *Cypress-Fairbanks Indep. Sch. Dist.*, 115 S.W.3d at 73.

Minihan alleged in his motion for new trial that newly-discovered evidence revealed that the Lot 11 System is illegal. The burden on a party seeking a new trial based on newly-discovered evidence is to show that "(1) the evidence has come to his knowledge since the trial; (2) it was not owing to the want of due diligence that it did not come sooner; (3) it is not cumulative; and (4) it is so material that it would probably produce a different result if a new trial were granted." *GJR Mgmt. Holdings, L.P. v. Jack Raus, Ltd.*, 126 S.W.3d 257, 260 (Tex. App.—San Antonio 2003, pet. denied); *see In re City of Houston*, 418 S.W.3d 388, 393 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding). Minihan did not establish either the first, second, or fourth of these elements.

The factual basis for Minihan's assertion that the Lot 11 System is illegal is that the 1982 application states that the system would employ a 1,000-gallon tank to serve a three-bedroom

house, but the system was actually constructed using two 550-gallon tanks to serve two houses on separate lots. The County Engineer testified at the new trial hearing that he had a "eureka" moment around August 1, 2018, after a conversation with Minihan and after the trial court had announced its summary judgment ruling, that the Lot 11 System is illegal because it was not constructed as permitted. He thereafter caused citations to issue to Minihan and O'Neill for "an unpermitted system."

Each of the facts underlying the County Engineer's opinion was known to Minihan well before the summary judgment hearing. Minihan has known since the Lot 11 System was installed that it serves two separate properties. He was also aware of the 1982 application at the time it was filed. He testified that he was informed in 2007, when he tried to sell the Lot 11-A property, that the Lot 11 System was an illegal cluster system. He also testified that he believed in 2015, when the system was inspected, that it was not constructed as he remembered it, and that he gave the County Engineer this information in 2016. None of this evidence is "newly-discovered." And the fact that the County Engineer did not tie this evidence together to reach a conclusion of illegality until after the summary judgment hearing does not make the evidence itself newly-discovered.

We also note that Minihan raised illegality as an affirmative defense in his pleadings in this case, and that he argues on appeal that illegality is apparent from the face of O'Neill's pleadings and the attachments to those pleadings. This argument belies Minihan's claim that his assertion of illegality depends on evidence that came to his knowledge only after the summary judgment hearing. The record demonstrates that Minihan did not sustain his burden to establish the first requirement for a claim of newly-discovered evidence. *See In re City of Houston*, 418 S.W.3d at 393; *GJR Mgmt.*, 126 S.W.3d at 260.

In addition, to the extent that Minihan required some expert or professional assessment of the legality of the Lot 11 System, there is no evidence that Minihan used any diligence to procure

such an assessment. Eleven years elapsed between 2007, when Minihan was first alerted that the system might be illegal, and 2018, when he raised the issue in his motion for new trial. But Minihan does not identify what efforts he made to obtain an assessment of illegality, nor does he demonstrate that he could not have obtained such an assessment in the exercise of due diligence. Indeed, the County Engineer testified that his "eureka moment" was the result of information obtained in a conversation with Minihan, himself. There is no explanation in the record for why Minihan could not have relayed that information in time to raise illegality at the summary judgment stage. Minihan did not sustain his burden to establish the second requirement for a claim of newly-discovered evidence. *See In re City of Houston*, 418 S.W.3d at 393; *GJR Mgmt.*, 126 S.W.3d at 260.

Minihan likewise failed to sustain his burden to establish the fourth necessary element—that the allegedly newly-discovered evidence is so material that it would probably produce a different result if a new trial were granted. *See In re City of Houston*, 418 S.W.3d at 393; *GJR Mgmt.*, 126 S.W.3d at 260. Minihan argues that the Lot 11 System is illegal because neither party nor their predecessors in interest had a permit or approved plan to construct and operate the system as a cluster system. A cluster system is a sewage system designed to serve two or more sewage-generating systems on two or more separate legal tracts. 30 TEX. ADMIN. CODE § 285.2(10). Cluster systems are no longer authorized, but a preexisting cluster system may still be used and may be repaired or altered in compliance with the administrative code. *See id.* at § 285.6.

On appeal, Minihan specifically asserts that the Lot 11 System violates section 285.3 of the Texas Administrative Code, which provides that "[a] person shall hold a permit and an approved plan to construct, alter, repair, extend, or operate an on-site sewage facility (OSSF) unless the OSSF meets one of the exceptions in subsection (f) of this section." 30 TEX. ADMIN. CODE § 285.3(a). One such exception is that the system is not creating a nuisance and "was

installed before September 1, 1989, provided the system has not been altered, and is not in need of repair." *Id.* at § 285.3(f)(1)(A).

No party contends that the Lot 11 System is creating a nuisance. In addition, there is evidence that the system was inspected in 2015 and was found to be functioning properly and not in need of repair. There is no evidence that the system ceased to function properly or became in need of repair between that inspection and the new trial hearing.

Minihan argues that the quoted exception to the permit requirement does not apply because the Lot 11 System was altered after its installation in 1982 to include an unauthorized tie-in to Lot 11-B.[2] But the evidence is to the contrary. As recited in the 1999 Agreement, which Minihan signed, the Lot 11 System has been jointly used by the owners of Lot 11-A and Lot 11-B since its installation. Further, a diagram introduced into evidence shows that the system was constructed with lines running to both properties. Minihan testified that the system was not constructed the way he remembered it to be, but he did not identify in what respect it differed or even what his recollection was. This testimony is too vague to have any probative value. *See Huang v. Bd. of Regents, Univ. of Tex. Sys.*, No. 03-01-00297-CV, 2002 WL 534424, at *4 (Tex. App.—Austin Apr. 11, 2002, pet. denied) (mem. op., not designated for publication) (testimony vague and of no probative value).

It was within the trial court's discretion to conclude that the evidence presented at the new trial hearing is not "so material that it would probably produce a different result if a new trial were granted." *See GJR Mgmt.*, 126 S.W.3d at 260. That evidence establishes that the Lot 11 System

---

[2]Minihan also appears to argue that the exception does not apply even if the system was originally installed as a cluster system, because that constitutes an alteration of the approved plan. But the exception clearly refers to alterations to the actual system as installed: "*installed* before September 1, 1989, provided *the system* has not been altered . . . ." 30 TEX. ADMIN. CODE § 285.3(f)(1)(A) (emphasis added). Indeed, the whole point of the exception is that a permit and approved plan are not required at all. *See id.* at 285.3(a) (permit and approved plan are required unless exception applies).

was originally constructed as a cluster system, serving both Lot 11-A and Lot 11-B. There is no evidence that it was altered after its construction to become a cluster system. The evidence thus supports the conclusion that the Lot 11 System is *not* illegal because it falls within the permitting exception noted above for systems that are not creating a nuisance, were installed before September 1, 1989, have not been altered, and are not in need of repair. *See* 30 TEX. ADMIN. CODE § 285.3(f)(1)(A).

Minihan also failed to establish that the Lot 11 System violates Administrative Code section 285.3 for a second reason—Minihan did not affirmatively show that there is no permit to construct and operate the system as a cluster system. Minihan bases his contention that there is no such permit solely on the 1982 application that requests permission to construct a septic system on Lot 11 with a 1,000 gallon tank to serve a three-bedroom house. We agree that this application does not reveal that the system will serve a second property, *i.e.*, that it is a cluster system. But additional evidence in the record shows that this fact does not establish that the system is illegal.

County Engineer Werner testified that the Lot 11 System is illegal because it was not constructed according to its permit. Werner did not assume his position as County Engineer until 2015, thirty-three years after the system was installed, and did not profess to have any personal knowledge of how it was constructed or permitted. But Werner also does not have any institutional knowledge of how the system was permitted because his file does not contain a permit for the system.[3] Werner's file is also missing other documents that he stated should be included, such as an authorization to construct, a site evaluation, inspections, and a license to operate. Werner acknowledged that many Bandera County records have been lost or destroyed over the years

---

[3]The 1982 application that is in the record is marked "approved." But Werner testified that approval of an application simply starts the process to get authorization to construct. It therefore cannot be the permit to construct or operate referenced in section 285.3(a). *See* 30 TEX. ADMIN. CODE § 285.3(a).

because of flooding, and that it was possible that relevant septic system records had been lost or destroyed before he became employed by the county in 2015.

Because his file did not contain the documents necessary to reach his conclusion of illegality, Werner relied instead on a conversation with Minihan concerning how the system was constructed. But Minihan testified that he did not know whether the system was constructed according to its permit. He testified only that it was not constructed the way he remembered it. The record does not disclose how the construction differed from Minihan's recollection, or how that recollection has any bearing on how the system was permitted.

Minihan did not sustain his burden, as movant on a motion for new trial based on newly-discovered evidence, to produce evidence of illegality that is so material that it would probably produce a different result if a new trial were granted. *See In re City of Houston*, 418 S.W.3d at 393; *GJR Mgmt.*, 126 S.W.3d at 260. The trial court did not abuse its discretion by denying Minihan's motion for new trial asserting illegality. Issue number one is overruled.

### *Disposition of all claims*

In issue number two, Minihan argues that the trial court's judgment does not dispose of all of his counterclaims. Specifically, he contends that the judgment does not resolve his claim for a declaration that he has "no obligation to provide facilities or land for the treatment, storage, conveyance, disbursement and/or absorption of septic waste generated from [Lot 11-B] in the event the current septic tank and drain field is deemed in violation of rule, code, ordinance or statute of Bandera County or the State of Texas, or otherwise abandoned." O'Neill responds that this requested declaration is not ripe for adjudication.

Ripeness "focuses on whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Perry v. Del Rio*, 66 S.W.3d 239,

249 (Tex. 2001). "Ripeness concerns not only whether a court *can* act—whether it has jurisdiction—but prudentially, whether it *should*." *Id.* at 249-50 (emphasis in original).

By declaring that the 1999 Agreement created an express easement appurtenant, the trial court determined that Minihan does have "an obligation to provide facilities or land for the treatment, storage, conveyance, disbursement and/or absorption of septic waste generated from [Lot 11-B]." What Minihan contends is still unresolved is whether these obligations remain "*in the event* the current septic tank and drain field is deemed in violation of rule, code, ordinance or statute of Bandera County or the State of Texas, or otherwise abandoned." (Emphasis added.) This requested declaration, by its own language, concerns "uncertain or contingent future events that may not occur." *See Perry*, 66 S.W.3d at 249. The issue is therefore ripe for adjudication only if the stated contingency had already occurred at the time of adjudication. *See id.* at 250 (consider facts at time of adjudication to determine ripeness).

No party contends that the septic system has been abandoned. Minihan urges, instead, that it has been deemed in violation of county rules and regulations. He relies on the affidavit of County Engineer Werner, which states that Werner concluded on or about August 1, 2018, that the Lot 11 System was in violation of its permit because of "un-permitted or un-approved material alterations of the system from the approved design." Werner further concluded that continued use of the system was in violation of county rules and regulations.

Even if the County Engineer's conclusion of illegality is sufficient to "deem" the Lot 11 System to be illegal (which we address below), he did not reach that conclusion until after the trial court rendered judgment on the parties' summary judgment motions. The contingency on which Minihan's third requested declaration depends therefore had not occurred at the time of adjudication, and the issue was not ripe. *See Perry*, 66 S.W.3d at 249-50. We will nevertheless consider the issue in the context of Minihan's motion for new trial, as Minihan argues that the

contingency occurred before the trial court signed the final judgment, and the trial court entertained the issue at the new trial hearing.

The evidence presented to the trial court, as discussed above, does not show that the Lot 11 System is illegal. At most, it shows that County Engineer Werner is of the opinion that it is illegal and issued citations to that effect. But Werner's assessment merely begins the inquiry. As he, himself, explained, Werner is not the ultimate authority on whether a septic system is in violation of a rule, regulation, or statute. He simply makes an initial decision and issues a citation. That citation then goes to the county attorney, who may disagree with his assessment and decline to prosecute the matter. Thus, despite Minihan's repeated assertion that Bandera County has deemed the system to be illegal, Werner's assessment is not necessarily that of Bandera County. In addition, Werner admitted that he does not have any knowledge of the appeal process, either in the context of a county prosecution or a Texas Commission on Environmental Quality ("TCEQ") violation. In fact, concerning proceedings following his initial citation, Werner testified, "I don't care because at that point I have no say in it."

The evidence adduced at the new trial hearing does not demonstrate that the necessary contingency has occurred to render Minihan's requested declaration ripe for adjudication. As discussed above, Werner concluded that the system is illegal because it was not constructed as permitted even though he does not have, and has never seen, the system permit, which may well have been lost or destroyed long before he assumed the job of County Engineer. In addition, Werner is not the arbiter of whether the system is, or is "deemed to be," illegal. The determination of illegality necessarily involves a legal process, including a decision by the county attorney to prosecute and culminating with the exhaustion of legal or administrative appeals, in which Werner admittedly plays no role.

Based on the record before it, even if the trial court had jurisdiction to address Minihan's requested declaration, it was within that court's discretion to determine, prudentially, that it should not address it because the issue was not ripe. *See Perry*, 66 S.W.3d at 249-50. In other words, the trial court did not abuse its discretion by denying Minihan's motion for new trial to address the contingent illegality declaration. Issue number two is overruled.

### *Equitable and just attorney's fees*

In his third issue on appeal, Minihan challenges the trial court's award of attorney's fees to O'Neill. The fee award was made pursuant to section 37.009 of the Declaratory Judgments Act, which provides that a court may award "reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. Minihan does not contest the reasonableness and necessity of the awarded fees, but argues that they are not equitable and just.

The award of attorney's fees under section 37.009 is within the trial court's sound discretion, subject to the requirement that any fees awarded be reasonable and necessary as well as equitable and just. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). Whether fees are reasonable and necessary are questions of fact, but whether they are equitable and just are questions of law. *Id.* The determination of what fees are equitable and just is "not susceptible to direct proof but is rather a matter of fairness in light of all the circumstances." *Ridge Oil Co., Inc. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 162 (Tex. 2004); *see Bexar Cty., Tex. v. Deputy Sheriff's Ass'n of Bexar Cty.*, 429 S.W.3d 673, 678 (Tex. App.—San Antonio 2014, no pet.).

The basis for Minihan's challenge to the award of attorney's fees in this case is that it is neither equitable nor just to award fees for efforts to enforce an illegal agreement. But, for all the reasons discussed above, O'Neill established that the 1999 Agreement created an enforceable express easement appurtenant, and Minihan failed to establish that the agreement (or the Lot 11

System itself) is illegal. The foundation for Minihan's challenge to the attorney's fee award thus fails. Issue number three is overruled.

## Conclusion

The trial court did not err by granting O'Neill's motion for summary judgment and declaring the existence of an express easement permitting the owners of Lot 11-B to continue joint usage of the Lot 11 System. Additionally, the trial court did not abuse its discretion by awarding attorney's fees and by denying Minihan's motion for new trial. The judgment of the trial court is affirmed.

Irene Rios, Justice