

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| TEXAS DEPARTMENT OF MOTOR VEHICLES, | § | No. 08-18-00165-CV |
| | § | |
| Appellant, | | Appeal from the |
| | § | |
| v. | | 243rd District Court |
| | § | |
| | | of El Paso County, Texas |
| GERALDINE BUSTILLOS, | § | |
| | | (TC# 2018DCV1204) |
| Appellee. | § | |

## **O P I N I O N**

In this interlocutory appeal, Appellant Texas Department of Motor Vehicles (the DMV) challenges two related orders by the trial court, one denying the agency's plea to the jurisdiction and the other sustaining objections asserted by Appellee Geraldine Bustillos to portions of the evidence attached to the plea. Bustillos filed suit against the DMV alleging that the agency retaliated against her for filing a workers' compensation claim in violation of chapter 451 of the Texas Labor Code. *See* TEX. LAB. CODE ANN. §§ 451.001-.003. The DMV responded by filing a plea to the jurisdiction and, in the alternative, a motion for summary judgment, in which the agency asserted that the jurisdictional evidence of the case negated a prima facie case of retaliation and thus, Bustillos had failed to raise a genuine issue of material fact as to retaliatory intent, as required

to survive a jurisdictional plea. We hold that the trial court erred in denying the DMV's plea to the jurisdiction because Bustillos failed to raise a genuine issue of material fact on an essential element of her prima facie case of retaliation, or otherwise rebut the agency's legitimate, non-retaliatory reason for terminating her employment. We reach this conclusion without need to consider the agency's additional, stricken evidence.

Finding error, we reverse the trial court's denial of the DMV's plea to the jurisdiction and dismiss the retaliation claim based on lack of subject matter jurisdiction.

## I. BACKGROUND

### A. The facts[1]

As of 2010, James Chesshire managed the DMV's El Paso Regional Service Center of the Vehicle Titles and Registration Division (the Service Center). The Service Center provided title and registration services to El Paso County and its surrounding area. Melissa Frescas worked as the office coordinator who trained all clerks and set their work schedules and assignments. Prior to this position, Frescas worked as a clerk herself. Frescas filled in for clerks and made calls to customers whenever the office operated short of staff or was busy. About six to seven clerks worked at the Service Center to include Geraldine Bustillos, who was hired in May 2013. All clerks were required to perform their duties in compliance with state and federal laws, rules, and regulations that pertain to the issuance of vehicle titles and registrations.

---

[1] Our recitation of facts below will be based only on the evidence that was admitted by the trial court according to its rulings. In addition, we set out the general facts underlying Bustillos's claim viewing all evidence under the applicable standard of review. *See Alamo Heights Ind. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018) (instructing that review of a plea to the jurisdiction mirrors that of a summary judgment and requires a reviewing court to take as true all evidence favorable to the non-movant).

2

Clerks of the DMV provide customer service and process temporary registration permits for vehicles and trailers. For issuance of a permit, the process begins when a clerk is randomly assigned to a customer by means of an automated queuing system. The assigned clerk first enters the customer's vehicle identification number (VIN) into a database known as the Registration and Title System (RTS). This database accesses all motor vehicle title-and-registration records maintained by the DMV.

As a second step, the clerk also enters the customer's VIN into the National Motor Vehicle Title Information System (NMVTIS), an expanded database that includes history from other states and allows a clerk to determine whether a vehicle under review has ever been branded as "junk" or "salvage." If a VIN is located in the NMVTIS, and it shows that it has not been branded as salvage or junk, the clerk then issues a permit. But if the vehicle has been declared as salvage or junk, the clerk is not allowed to issue a permit.

If no vehicle record is located within the NMVTIS, the clerk then uses a third system called "VINAssist." VINAssist helps determine whether there is an error in the VIN provided by a customer. For example, if a single letter or digit in a VIN is not correct, VINAssist informs the clerk of the error, and the clerk is then able to enter a corrected VIN into the NMVTIS database. If VINAssist confirms that a VIN is in good form and no other record is located, the clerk can issue a permit.

As a clerk, Bustillos worked under the supervision of Frescas. From the start, Bustillos was regarded by the agency as a good employee; Chesshire viewed her as a very productive employee and a quick learner. The two performance evaluations Bustillos received for her annual review indicated that she exceeded DMV expectations.

3

Beginning in July 2015, however, several factors raised concerns for Chesshire that Bustillos may have been involved in illegal or inappropriate activity while performing her clerking duties. Chesshire and other employees noticed that Bustillos used her cash drawer in an atypical manner and frequently had trouble keeping the drawer in balance. Moreover, sometime in August or September 2015, both Chesshire and Frescas observed that certain customers frequently attempted to bypass the automated queuing system to transact their business solely with Bustillos. In particular, a customer by the name of Ricardo Sigala—a known, unlicensed dealer—would insist on being seen only by Bustillos. This type of activity violated rules of the Service Center.

Based on these concerns, Chesshire conducted a review, on October 6, 2015, of Bustillos's past transactions involving Sigala and discovered that she had improperly issued six permits to him for salvage vehicles. Expanding his review, Chesshire sent a request, three days later, to the DMV's IT division for a review of all permit transactions completed by Bustillos, and all other clerks at the Service Center, beginning January 1, 2015. Before completion of this review, however, an incident occurred on October 12, 2015, where Chesshire described that he believed he had caught Bustillos intentionally issuing a permit to Sigala for a salvage vehicle.

Bustillos, however, described the October 12 incident in a contradictory manner. Bustillos testified that Chesshire merely told her that she had entered Sigala's VIN incorrectly by failing to use VINAssist. In response, she informed him that she did not have access to VINAssist. Although she routinely used RTS and NMVTIS to ensure that permits were not issued to junk and salvage vehicles, Bustillos claimed she was never trained to use VINAssist, and also claimed she did not

4

know if anyone ever used it.[2] Furthermore, Bustillos acknowledged that the queuing system was one way in which customers would get assistance from a clerk, but she stated that customers were also permitted to ask for a specific clerk. Bustillos would allow customers to seek her assistance in this way, and she stated at least two other clerks did the same. Following this incident on October 12, Chesshire informed Bustillos that she was under investigation and that the matter had been referred to management in Austin. According to Bustillos, Chesshire could not provide her with any proof of misconduct. And in her deposition, Bustillos testified that any improper issuance of permits would have been due to her lack of training. Nonetheless, Bustillos was reassigned to phone duty only at that time.

On November 4, 2015, Bustillos reported she had injured her back, shoulder, and neck while replacing a water jug in the breakroom. She immediately informed Chesshire about her injury, and even though Chesshire told her that they needed to fill out a report, she left work that same day. Bustillos returned to the office a few days later for part of the day, and she told Chesshire that she was going to make an appointment with a doctor. She testified in her deposition this appeared to bother Chesshire based upon his non-verbal demeanor, but she acknowledged that she did not know what his actual thoughts were. According to Bustillos, the only thing Chesshire told her was that she should do what she needed to do. Bustillos also acknowledged that, after informing Chesshire she was going to see a doctor, no one at the DMV ever made any negative comments about her injury or her plan to see a doctor. Bustillos eventually filed her workers' compensation claim, and aside from going into work for that partial day, she never returned to work.

---

[2] We note, however, Bustillos also claimed that Frescas directed her to Sandy Benson to "pull up" VinAssist for her. She described that Benson did so "no more than five times."

Meanwhile, Jeremiah Kuntz, director of the Vehicle Titles and Registration Division of the DMV, was informed about Bustillos's suspected fraud at a quarterly meeting of regional managers in Austin. Internal investigations by both Chesshire and the internal audit division revealed that Bustillos had issued numerous permits for salvage and junk vehicles and for vehicles with fake VINs in violation of the DMV's policies and state law. The DMV sent Bustillos official notice of possible disciplinary action on December 10, 2015. This notice detailed the policies she violated by allowing customers to bypass the queuing system in order to assist them personally and by intentionally issuing invalid permits—namely, nineteen permits to salvage vehicles, one permit to a junk vehicle, and an additional thirty-five permits to fake VINs. On December 11, 2015, Bustillos sent a written rebuttal by email. In her email, she responded that she did not intentionally issue bad permits, she had never been told to use VINAssist, and she did not receive a password to VINAssist until the beginning of December 2015. She also stated, "I believe all of the allegations against me were brought about due to my complaint about favoritism in the office. I feel that this is in retaliation for that complaint since the investigation into my daily work started shortly after."[3]

After reviewing Bustillos's response with Chesshire, Kuntz believed Bustillos's actions were intentional due to "the sheer volume of improper transactions, especially with respect to certain dealers or repeat customers . . . ." Kuntz determined, in the alternative, that even if those improper transactions could be attributed to mere oversight or mistake, the errors "still would have been considered gross negligence of job duties or gross misconduct" meriting termination. Kuntz also concluded that Bustillos was an outlier because no other employee at the Service Center

---

[3] Around September 17, 2015, Bustillos made a complaint to Chesshire about favoritism in the office regarding, among other things, Frescas socializing with another clerk.

committed a similar number of errors in issuing permits to salvage or junk vehicles. Likewise, Frescas testified she was unaware of any other situations where a clerk at the Service Center issued temporary permits to salvage or junk vehicles, or where a customer sought out a particular clerk in order to obtain such a permit.

On December 15, 2015, a notice of disciplinary action was sent to Bustillos informing her of Kuntz's independent decision to terminate her that same day. In his declaration attached to the DMV's pleading, Kuntz stated that he made his decision after reviewing all the evidence and consulting with the DMV's human resources division, civil rights division, and general counsel's office. And although Kuntz admitted he knew Bustillos had filed a workers' compensation claim when he decided to terminate her employment, he stated "without hesitation that this played no part whatsoever in [his] decision." He added that he had a zero-tolerance policy for all fraud or other conduct that suggested an abuse of the public trust and noted, "for me to have not terminated Bustillos for her misconduct simply because she had filed a workers' compensation claim after-the-fact, would have been to treat her differently than someone else who has never filed a claim." Similarly, Chesshire stated in his declaration, "[m]y investigation, as well as my opinion that Bustillos' actions were intentional and had violated TxDMV policy, did not play any role whatsoever in my treatment of Bustillos' injury and workers' compensation claim. At all times, I acted according to policy with respect to her workers' compensation claim."

## B. The procedural history

Bustillos sued the DMV, alleging it violated both chapter 451 of the Texas Labor Code and the Family and Medical Leave Act (FMLA). The DMV removed the case to federal court and filed a motion for summary judgment on both claims. The United States District Court for the Western

7

District of Texas dismissed Bustillos's FMLA claim with prejudice and declined to exercise its supplemental jurisdiction to resolve the state-law retaliation claim. Instead, it dismissed that claim without prejudice, and Bustillos filed in state court the instant petition alleging the DMV committed an act of retaliation against her for filing a workers' compensation claim in violation of chapter 451 of the Texas Labor Code.

The DMV responded by filing its "Plea to the Jurisdiction, and, in the Alternative, No-Evidence Motion for Summary Judgment."[4] In its plea,[5] the DMV made the same arguments it now makes on appeal asserting that Bustillos could not rebut the DMV's non-retaliatory reason for discharging her, and thus, there existed no genuine issue of material fact in support of her claim. The DMV attached twenty-two exhibits to its plea in support of its arguments.

Bustillos filed her response to the DMV's plea and incorporated several of her own exhibits to be used "for all purposes[.]" Later, Bustillos filed her "Objections to and Motion to Strike Defendant's Incompetent Evidence," requesting exclusion of large portions of the DMV's evidence. On the same day that the DMV filed a response to this first set of objections, Bustillos filed her "Supplemental Objections to and Motion to Strike Defendant's Incompetent Evidence." The supplemental set of objections challenged additional parts of the DMV's evidence. The day after Bustillos filed her second set of objections, the trial court held a hearing on the DMV's plea

---

[4] As will be discussed in more detail infra, we will refer to this combined pleading as a plea to the jurisdiction because the DMV's challenge in its no-evidence summary judgment mirrors its plea to the jurisdiction complaint that challenges the trial court's jurisdiction to hear Bustillos's claim.

[5] In the trial court, the DMV asserted a plea to the jurisdiction and, as an alternative ground, a no-evidence motion for summary judgment. Although the trial court's order denying the motion appears to reference both grounds, the parties' briefing addresses only the plea to the jurisdiction. Consequently, we only address the plea to the jurisdiction and not the unbriefed no-evidence motion for summary judgment.

to the jurisdiction and Bustillos's corresponding objections. After hearing argument from the parties, the trial court rendered two orders, one denying the DMV's jurisdictional plea and the other sustaining both sets of Bustillos's evidentiary objections. The DMV filed a timely notice of interlocutory appeal challenging both orders. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (authorizing an interlocutory appeal when the trial court grants or denies a plea to the jurisdiction).

## II. DISCUSSION

On appeal, the DMV raises two issues challenging the trial court's rulings on its plea to the jurisdiction. First, it challenges the sufficiency of the evidence establishing a prima facie case of retaliation, and of any evidence rebutting the agency's legitimate, non-retaliatory grounds for terminating Bustillos's employment. In the absence of a prima facie case, the DMV asserts that Bustillos cannot establish subject matter jurisdiction of the trial court over her claim of a violation of section 451.001 of the Texas Labor Code. Second, as a supplemental issue, the DMV argues the trial court erred in sustaining objections and excluding from consideration the additional evidence that the DMV attached to its jurisdictional pleading, which it argues would conclusively negate Bustillos's claim. For the reasons explained below, we need only address the DMV's first challenge.

### A. Standard of review

In Texas, sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the state or certain governmental units have been sued, unless the state consents to suit. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004); *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847). Subject matter jurisdiction is essential to a court's power to

decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). The absence of subject matter jurisdiction may be raised by a plea to the jurisdiction, *Texas Dep't of Transportation v. Jones*, 8 S.W.3d 636, 637 (Tex. 1999) (per curiam), or by other procedural vehicles such as a motion for summary judgment. *See, e.g.*, *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999). Accordingly, an agency of the state may properly assert immunity from suit by means of a plea to the jurisdiction. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 93 (Tex. 2012); *see also* TEX. TRANSP. CODE ANN. § 1001.002 (recognizing the DMV as an agency of the state).

We review a trial court's ruling on a plea to the jurisdiction de novo. *Miranda*, 133 S.W.3d at 228. In a plea to the jurisdiction, a party may challenge either the pleadings or the existence of jurisdictional facts, or both. *Id.* at 226–27. When a defendant challenges the plaintiff's pleadings, our determination turns on whether the pleader has alleged facts sufficient to demonstrate the court's subject matter jurisdiction. *Id.* at 226. However, if a plea challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties to resolve the jurisdictional issues raised. *Id.* at 227 (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000) (confining the evidentiary review to evidence relevant to the jurisdictional issue)). In cases in which the jurisdictional challenge implicates the merits of the plaintiff's cause of action and the plea includes evidence, the court necessarily reviews the relevant evidence to determine if a fact issue exists. *Miranda*, 133 S.W.3d at 227. In such cases, "this standard generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id.* at 228.

Under this standard, "if the plaintiffs' factual allegations are challenged with supporting evidence necessary to consideration of the plea to the jurisdiction, to avoid dismissal plaintiffs

10

must raise at least a genuine issue of material fact to overcome the challenge to the trial court's subject matter jurisdiction." *Id.* at 221. By requiring the state to meet the summary judgment standard of proof, a plaintiff is protected from having to put on her case simply to establish the court's jurisdiction. *Id.* at 228 (citing *Bland*, 34 S.W.3d at 554). Rather, "after the state asserts and supports with evidence that the trial court lacks subject matter jurisdiction, we simply require the plaintiffs, when the facts underlying the merits and subject matter jurisdiction are intertwined, to show that there is a disputed material fact regarding the jurisdictional issue." *Id.* In determining whether a material fact issue exists, we must take as true all evidence favorable to the plaintiff, to include indulging every reasonable inference and resolving any doubts in favor of the plaintiff. *Id.* In doing so, however, we cannot disregard evidence necessary to show context, and we cannot disregard evidence and inferences unfavorable to the plaintiff if reasonable jurors could not. *Alamo Heights*, 544 S.W.3d at 771 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 811–12, 822–23, 827 (Tex. 2005)).

In our review of the trial court's ruling, we consider the evidence attached to the motions and responses of both parties. *Cf. Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 835 (Tex. 2018) (per curiam) (holding that the defendant was entitled to rely on the plaintiff's evidence submitted against its summary judgment motion and noting that Rule 166a(c) of the Texas Rules of Civil Procedure allows a court to consider evidence in the record that is attached to either the motion or a response); *Wilson v. Burford*, 904 S.W.2d 628, 629 (Tex. 1995) (per curiam) (holding that a deposition transcript referred to in plaintiffs' response to defendants' motion for summary judgment was, by the plain language of Rule 166a(c), proper summary judgment evidence on which both the movant and the respondent could rely).

**B. Preservation of error**

As a preliminary matter, before reaching the merits of the first issue presented, we address Bustillos's claim that the DMV failed to preserve purported trial court error by incorrectly articulating the grounds or legal standard for a ruling on a plea to the jurisdiction. Relying on *Miranda*, she contends that the DMV neglected to preserve error by failing to address its obligation to "first present evidence" conclusively negating one or more elements of the retaliation cause of action. *See* 133 S.W.3d at 226, 228. Because Bustillos herself misconstrues the jurisdictional standard, we disagree.

Based on our reading of *Miranda* and *Garcia*, we conclude that the DMV presented a proper plea to the jurisdiction that challenged the jurisdictional facts of Bustillos's claim and, within the jurisdictional pleading, the DMV properly addressed the burden-shifting analysis required of the court's review. *Id.* at 221; *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). With evidence attached, the DMV's plea to the jurisdiction challenged the court's subject matter jurisdiction over the retaliation suit based on insufficient evidence to establish a waiver of the agency's immunity from suit. As a preliminary matter, we decline to find that the DMV failed to adequately apprise the court below of its jurisdictional argument such that it wholly waived its complaint for review. *See* TEX. R. APP. P. 33.1(a)(1)(A) (requiring only that a party's request, objection, or motion state the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint). And even still, as further pointed out by the DMV in its reply, it is well settled that subject matter jurisdiction can be raised for the first time on appeal. *See Rusk State Hosp.*, 392 S.W.3d at 94–95; *Legarreta v. FIA Card Servs.*, 412 S.W.3d 121, 124 (Tex. App.—El Paso 2013, no pet.). Consequently, an appellate court must

consider challenges to the trial court's subject matter jurisdiction on interlocutory appeal, regardless of whether such challenges were presented to or determined by the trial court. *See Waco Indep. Sch. Dist. v. Gibson,* 22 S.W.3d 849, 850–51 (Tex. 2000).

We therefore reject Bustillos's initial contention that the DMV failed to preserve purported trial court error by the form of its plea.

## C. The DMV's plea to the jurisdiction

In its first issue, the DMV argues Bustillos failed to present sufficient evidence of a prima facie claim of retaliation and failed to present any evidence negating the legitimate, non-discriminatory reason for her termination, which it asserts she must do to establish the court's subject matter jurisdiction over the retaliation claim. The DMV contends that Bustillos had the initial burden to demonstrate a causal link between the filing of her workers' compensation claim and her discharge. Yet, to this assertion, Bustillos argues that her obligation to submit evidence responding to the DMV's plea to the jurisdiction did not arise until the DMV first presented evidence conclusively negating one or more elements of her claim. And, even still, Bustillos contends she "made an evidentiary showing to the trial court of an existing genuine issue of material fact that her termination was caused, in part, by her making a workers' compensation injury report or claim . . . ."

Given the parties' initial disagreement over the proper standard of review, we begin our discussion by setting out the analytical framework for resolving the DMV's jurisdictional claim, which asserts there is no waiver of immunity applicable to Bustillos's retaliation claim brought under the Texas Workers' Compensation Act (TWCA). *See* TEX. LAB. CODE ANN. § 451.001.

13

1. **Analytical framework for workers' compensation retaliation claims asserted against a governmental employer**

Section 451.001 of the Labor Code prohibits "[a] person" from discharging or in any other manner discriminating against an employee because that employee filed a workers' compensation claim in good faith. *See* TEX. LAB. CODE ANN. § 451.001. As relevant here, the Supreme Court of Texas previously considered whether a chapter 451 cause of action would apply against a state agency employer as it otherwise applied against a private employer. *Kerrville State Hosp. v. Fernandez*, 28 S.W.3d 1, 2 (Tex. 2000). To answer the inquiry, *Fernandez* first acknowledged that the doctrine of sovereign immunity protects the State of Texas, and its agencies, from lawsuits for damages, unless waived by legislative consent. *Id*. at 3 (citing *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997), *superseded by statute on other grounds as stated in Miranda*, 133 S.W.3d at 224). Moreover, *Fernandez* observed that "[t]he courts of our state require clear and unambiguous legislative expression before they will hold that sovereign immunity has been waived." *Id*.

After construing the Anti-Retaliation Law, *Fernandez* concluded that a waiver of immunity was provided, not by the Act itself, but rather by the State Applications Act (SAA) found in chapter 501 of the Labor Code. *Id*. at 4. *Fernandez* noted that the SAA expressly adopted the Anti-Retaliation Law as one of its provisions. *Id*. (interpreting prior version of the SAA); TEX. LAB. CODE ANN. § 501.002(a). And, as *Fernandez* further described, the SAA is one of several statutes that require governmental entities to provide workers' compensation insurance coverage to their employees. *Id.*; *see* TEX. LAB. CODE ANN. § 501.002(b) (providing that, for purposes of its own provisions and the provisions of the Anti-Retaliation Law, "the individual state agency shall be

14

considered the employer").

Notably, *Fernandez* held that the designation of state agencies as employers for purposes

of the Anti-Retaliation Law reflected a clear and unambiguous waiver of their sovereign immunity.

28 S.W.3d at 9. The Court observed:

> [S]ection 15(b) of the SAA makes no sense unless the Legislature has waived
> immunity. Why would the Legislature designate an individual state agency as the
> employer for purposes of a law creating a cause of action if the agency cannot be
> sued for that cause of action? Similarly, section 15(b) contemplates that the
> individual agency must be a party to an anti-retaliation suit. We have previously
> held that making a state entity a necessary party evidences intent to waive
> immunity. We therefore conclude that there is no other sensible construction of
> section 15(b).

*Id.* at 6–7 (citation omitted). Based on this provision, the Court thus determined that the Legislature

intended to waive state agencies' immunity under the Anti-Retaliation Law. *Id.* at 2. *Fernandez*

further cautioned, however, that the SAA expressly limited the recovery of an Anti-Retaliation

claim to the damages available under the Tort Claims Act. *Id.* at 10; *see* § 501.002(d) (providing

that "[n]either this chapter nor Subtitle A authorizes a cause of action or damages against the state,

a state agency, or an employee of the state beyond the actions and damages authorized by

Chapter 101, Civil Practice and Remedies Code").

Although *Fernandez* construed a prior version of the SAA, we note its current iteration

continues to adopt chapter 451 such that it designates state agencies as employers for purposes of

the statute, and it authorizes a workers' compensation retaliation cause of action for damages to

the extent of damages authorized by the Tort Claims Act. *See* TEX. LAB. CODE ANN.

§ 501.002(a)(10), (b), (d). Moreover, when we most recently construed the current version of the

Act, we concluded that *Fernandez* remained as binding precedent notwithstanding the

15

Legislature's subsequent adoption of Section 311.034 of the Texas Government Code. *Tex. Dep't of Family & Protective Servs. v. Parra*, 347 S.W.3d 362, 365–66 (Tex. App.—El Paso 2011, pet. denied); *see also Tex. Dep't of Aging & Disability Servs. v. Beltran*, 350 S.W.3d 410, 416 (Tex. App.—El Paso 2011, pet. denied); TEX. GOV'T CODE ANN. § 311.034 (providing that "a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language").

Even though *Fernandez* construed the SAA as providing a waiver of immunity for retaliation claims, no issue was further raised challenging the jurisdictional evidence. In that sense, then, the issue presented here by the DMV's plea to the jurisdiction moves the analytical inquiry a step forward beyond *Fernandez*. By their briefing, the parties jointly assert, and we agree, that analogous authorities apply such that a waiver exists but only when the plaintiff states a claim for conduct that actually violates the provisions of the statute. *Cf. State v. Lueck*, 290 S.W.3d 876, 881 (Tex. 2009) (construing the jurisdictional requirements of the Texas Whistleblower Act, TEX. GOV'T CODE ANN. § 554.0035); *Garcia*, 372 S.W.3d at 646 (considering whether a plaintiff's failure to allege a prima facie case of age discrimination, pursuant to Texas Labor Code section 21.051, deprived the trial court of jurisdiction over the claim). For example, when construing the immunity provision of the Whistleblower Act, the Supreme Court of Texas concluded in *Lueck* that jurisdictional requirements necessarily followed from statutory language requiring a violation of the act for there to be a waiver from suit. *Lueck*, 290 S.W.3d at 881 (citing TEX. GOV'T CODE ANN. § 554.0035). The immunity provision of that act provided as follows:

> A public employee who alleges a violation of this chapter may sue the employing
> state or local governmental entity for the relief provided by this chapter. Sovereign

16

> immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter.

*Id*.

Construing this language, the high court identified two jurisdictional requirements: the plaintiff must (1) be a public employee and (2) allege a violation of the statute. *Id*. (citing TEX. GOV'T CODE ANN. § 554.0035). Focusing on the second requirement—that is, requiring an allegation of a statutory violation—*Lueck* held it necessarily followed from the statutory language that the elements of the claim must be considered in order to ascertain what constituted a violation and whether that statutory violation had actually been alleged. *Id*. Based on this reasoning, *Lueck* concluded that the elements of a statutory claim pursuant to the Whistleblower Act could be considered as jurisdictional facts. *Id*.

Guided by *Lueck*, the Supreme Court then followed this reasoning in *Garcia*, which involved a retaliation case brought under the Texas Commission on Human Rights Act (TCHRA). *Garcia*, 372 S.W.3d at 637. Among other claims, the *Garcia* plaintiff filed suit alleging she was terminated in retaliation for her participation in protected activities. *Id*. at 632–33 (citing TEX. LAB. CODE ANN. § 21.051). After construing the TCHRA, *Garcia* concluded it similarly waived immunity from suit but only when the plaintiff actually stated a claim for conduct that would violate the act. *Id*. at 637. Here, guided by *Lueck* and *Garcia*, we conclude that the Legislature waived state agencies' immunity for claims brought under the TWCA for workers' compensation retaliation, but the immunity is waived only when the plaintiff states a claim for conduct that actually violates the statute. *Cf. Lueck*, 290 S.W.3d at 881; *Garcia*, 372 S.W.3d at 646.

17

In relevant part, section 451.001 protects an employee from retaliatory discharge for filing a workers' compensation claim in good faith. *See* TEX. LAB. CODE ANN. § 451.001(1). "An employer who violates this statute is subject to a retaliation claim, which constitutes an exception to the traditional doctrine of employment at will found in Texas law." *Kingsaire, Inc. v. Melendez*, 477 S.W.3d 309, 312 (Tex. 2015) (quoting *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 453 (Tex. 1996) (internal quotation marks omitted)).

To prevail in a TWCA-retaliation action, the plaintiff has the burden of making a prima facie showing that she, in good faith, filed a workers' compensation claim and that there is a causal link between her filing of the claim and her discharge or other act of discrimination by her employer. *See* TEX. LAB. CODE ANN. § 451.001(1); *Cardenas v. Bilfinger TEPSCO, Inc.*, 527 S.W.3d 391, 399 (Tex. App.—Houston [1st Dist.] 2017, no pet.). To establish a causal link between her firing and her filing of a workers' compensation claim, a plaintiff must demonstrate that "the employer's action would not have occurred when it did . . . ." *Melendez*, 477 S.W.3d at 319; *see also Cont'l Coffee*, 937 S.W.2d at 450 (providing that the "would not have occurred when it did" standard of causation applies in an anti-retaliation case as it does in a whistleblower case). "While an employee is not required to show that the filing of the worker's compensation claim was the sole cause of the alleged discriminatory behavior, she must establish that 'but for' the filing of the claim the termination would not have occurred when it did." *Hernandez v. Am. Tel. & Tel. Co.*, 198 S.W.3d 288, 291 (Tex. App.—El Paso 2006, no pet.).

In establishing a causal link between her discharge and her workers' compensation claim, an employee may rely either on direct or circumstantial evidence. *Melendez*, 477 S.W.3d at 312; *Hernandez*, 198 S.W.3d at 291. Regarding circumstantial evidence, the Supreme Court has

18

identified factors that—if proven by the employee—are considered evidence of such a causal link. *Cont'l Coffee*, 937 S.W.2d at 451. These factors, which are known as the *Continental Coffee* factors, are (1) knowledge of the compensation claim by those making the decision on termination; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the discharge was false. *Id*. An additional factor courts may consider is temporal proximity of the termination to the date of the injury or claim. *Echostar Satellite L.L.C. v. Aguilar*, 394 S.W.3d 276, 288 (Tex. App.—El Paso 2012, pet. denied). While no one factor is determinative and an employee is not required to produce evidence on all such factors, a retaliation plaintiff must produce "sufficient circumstantial evidence on a majority of these factors." *Armendariz v. Redcats USA, L.P*., 390 S.W.3d 463, 469 (Tex. App.—El Paso 2012, no pet.). "This evidence is relevant for determining whether a causal link exists, both in examining whether the employee established a prima facie case and the ultimate issue of whether the employee proved a retaliatory motive for the adverse employment action." *Parker v. Valerus Compression Servs., LP*, 365 S.W.3d 61, 67 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

Once the employee establishes a prima facie claim to include a causal link, the burden shifts to the employer to rebut the alleged discrimination by offering proof of a legitimate, non-discriminatory reason for its actions. *Id*. If the employer demonstrates a legitimate, non-discriminatory reason, then the burden shifts back "to the employee 'to produce controverting evidence of a retaliatory motive' in order to survive a motion for summary judgment." *Id.* (quoting *Green v. Lowe's Home Ctrs., Inc.*, 199 S.W.3d 514, 519 (Tex. App.—Houston [1st Dist.] 2006,

pet. denied)). "The employee must present evidence that the employer's asserted reason for the discharge or other adverse employment action was pretextual or 'challenge the employer's summary judgment evidence as failing to prove as a matter of law that the reason given was a legitimate, nondiscriminatory reason.'" *Id.* at 67–68 (quoting *Benners v. Blanks Color Imaging, Inc.*, 133 S.W.3d 364, 369 (Tex. App.—Dallas 2004, no pet.)). Summary judgment is proper if the employee fails to produce controverting evidence. *Id.* at 68.

## 2. Application to the DMV's plea to the jurisdiction

With supporting evidence attached, the DMV filed a plea to the jurisdiction, and in the alternative, a no-evidence motion for summary judgment, asserting two principal arguments: (1) Bustillos could not establish a causal connection between her workers' compensation claim and her termination, and (2) Bustillos failed to raise a genuine issue of material fact of pretext or retaliatory intent concerning the DMV's purported reason for her termination, which is that she issued temporary permits for "junk" or "salvage" vehicles in violation of state law and DMV policy. *See* TEX. LAB. CODE ANN. § 451.001(1); *Parker*, 365 S.W.3d at 67. On appeal, the DMV argues Bustillos failed to present sufficient evidence of a prima facie claim of retaliation and failed to present any evidence negating the legitimate non-discriminatory reason for her termination. Bustillos responds that, when viewed in the light most favorable to her and indulging all reasonable inferences in her favor, the trial court correctly denied the DMV's plea because she established there is a genuine issue of material fact that her termination was caused, at least in part, by her workers' compensation injury report or claim. Though the DMV filed both a jurisdictional plea, which mirrors a traditional summary judgment motion, as more fully discussed above, and a no-evidence motion for summary judgment, we will not segregate our review to

20

address the unique burdens associated with each procedural vehicle. Essentially, the DMV's pleading combined both traditional and no-evidence grounds. In reviewing a hybrid motion in which both parties bring forward summary judgment evidence, the differing burdens are immaterial, and the ultimate issue is whether fact issues exist. *See Buck v. Palmer*, 381 S.W.3d 525, 527 & n.2 (Tex. 2012) (per curiam). Thus, in conducting our de novo review, we will review the full summary judgment record to determine whether fact issues exist, and in doing so, we initially only consider the evidence admitted by the trial court and not the excluded evidence.

### a. Whether Bustillos established a prima facie case to create a presumption of retaliation

We begin with the first step of the analysis: the prima facie case. For this stage, the causal link required between the protected activity (i.e., the filing of a workers' compensation claim) and the adverse employment action (i.e., termination) is not onerous and does not rise to the level of a "but for" standard. *See Alamo Heights*, 544 S.W.3d at 782. Instead, Bustillos can establish her prima facie case "merely by proving close timing between the protected activity and the adverse action." *Id.* Here, we agree that Bustillos presented a prima facie link of closeness in time between the filing of her workers' compensation claim and her termination. *See id.* The record evidence shows that Bustillos was injured on November 4, 2015, she filled out a report for her claim on November 9, 2015, and she was terminated on December 15, 2015. Because there was less than two months between Bustillos's injury and her termination, we hold there is sufficient evidence for the first step in the analysis.

But a prima facie case does not establish the level of causation necessary to survive the jurisdictional challenge; it only shifts the burden of production to the employer to present a

21

legitimate reason for the termination. *See id*. Thus, in this instance, the burden of production shifted to the DMV to present a legitimate reason for its termination of Bustillos's employment.

### b. Whether the DMV presented evidence of a legitimate, non-discriminatory reason for Bustillos's termination

Because Bustillos met her prima facie burden by showing temporal proximity between her work-injury claim and her termination, the burden shifted to the DMV to present a legitimate, non-discriminatory reason for Bustillos's termination. *See id.* ("If the employee can establish a prima facie case of discrimination, a rebuttable presumption of discrimination arises, which can alone sustain a discrimination claim. But the employer can defeat this presumption *merely by producing evidence* of a legitimate, nondiscriminatory reason for the disputed employment action.") (emphasis added). The DMV asserts it discharged Bustillos from her employment due to her misconduct in issuing improper permits for vehicles or, said differently, for conduct that occurred prior to her filing of a workers' compensation claim.

Regarding this step of the burden shifting framework, the Supreme Court of Texas recently acknowledged in an analogous claim of retaliation based on the TCHRA that an employer is not forbidden from addressing performance issues involving employees who have engaged in protected activity, including following through on known pre-existing issues and addressing existing issues that come to light only during a subsequent investigation. *Alamo Heights*, 544 S.W.3d at 791–92. Furthermore, an employee's denials on such issues are insufficient to create a fact issue as to causation. *Id.* at 792. Rather, the critical issue is whether the employer's perception of the problems—accurate or not—was the real reason for a termination decision. *Id.*

22

In this case, Chesshire's review of Bustillos's transactions, coupled with an internal investigation by the DMV, purportedly revealed that Bustillos issued numerous permits for salvage and junk vehicles and for vehicles with fake VINs. This revelation was corroborated by the undisputed observations from various DMV employees who saw Bustillos engage in suspicious activity when using her cash drawer and by the undisputed fact that Bustillos's error rate far exceeded others such that it was an outlier among clerks of the Service Center. Armed with this evidence, Kuntz consulted with the human resources division, the civil rights division, and the general counsel's office. Both Kuntz and Chesshire stated that Bustillos's workers' compensation claim played no part in the decision to terminate her, but rather, the decision was based solely on her violation of the DMV's policies and her abuse of the public trust entrusted to her position. In particular, Kuntz noted that he had a zero-tolerance policy for all types of fraud and for him to not have fired Bustillos in light of the evidence presented would have been to treat her differently than any other employee.

In light of this evidence supporting the DMV's assertion that it terminated Bustillos for the non-discriminatory reason that she had improperly issued numerous permits prior to her workers' compensation claim (a pre-existing issue addressed only after an investigation was completed), we hold that the DMV presented evidence of a legitimate, non-discriminatory reason for Bustillos's termination: her violation of state law and agency policy by issuing improper vehicle permits. *See Harris Cty. Hosp. Dist. v. Parker*, 484 S.W.3d 182, 199–200 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (holding that the employer provided substantial evidence to show a nonretaliatory reason for an employee's termination where, while the employee was on FMLA leave, the employer learned that the employee had opened an independent pharmacy in violation of the

23

employer's policies); *Rodriguez v. City of Poteet*, No. 04-13-00274-CV, 2014 WL 769286, at \*5–6 (Tex. App.—San Antonio Feb. 26, 2014, no pet.) (mem. op.) (holding that the employer met its burden of proof in establishing a legitimate, non-discriminatory reason for terminating the employee where the summary judgment evidence showed that the employer terminated the employee for his violation of its policy prohibiting sexual harassment, as concluded by an investigation, and noting that the employer's burden is one of production rather than persuasion). Because the DMV satisfied this production requirement, the burden shifted back to Bustillos for the third and final stage of the analysis.

### c. Whether Bustillos met her burden to establish pretext and causation

The DMV's showing of a non-discriminatory reason for its termination of Bustillos's employment triggered her duty to illuminate a material fact issue as to whether the DMV's stated reason for terminating her was merely a pretext for a real, retaliatory purpose. *See Alamo Heights*, 544 S.W.3d at 790. Bustillos relies on circumstantial evidence to raise a fact issue on whether a causal link existed between her workers' compensation claim and her employment termination. *See Parker*, 365 S.W.3d at 67; *Melendez*, 477 S.W.3d at 312.

In her response to the DMV's evidence bearing on its explanation for the grounds for termination, Bustillos points to her own deposition testimony asserting that Chesshire never presented her with evidence about his concerns about her performance and, in any event, any improper issuance of permits was due to her lack of training. Notwithstanding her testimony, an employee's subjective belief that an employer's reason for her termination was false cannot alone supply a basis for so finding. *See Alamo Heights*, 544 S.W.3d at 792; *see also Hous. Auth. of City of El Paso v. Guerra*, 963 S.W.2d 946, 950 (Tex. App.—El Paso 1998, pet. denied) ("An

employee's subjective belief alone is not enough to support the causal connection required for a workers' compensation retaliation cause of action."); *Elgaghil v. Tarrant Cty. Junior Coll.*, 45 S.W.3d 133, 141 (Tex. App.—Fort Worth 2000, pet. denied) ("The only other evidence [the employee] offers to establish pretext is his own speculation that [the employer] lied about its reasons for refusing to promote him. However, an employee's subjective belief that an employer has given a false reason for its employment decision is not competent summary judgment evidence.").

And considering the specific reason she asserted for her proposition that the DMV's allegations were wrong—that the DMV failed to train her—Bustillos still failed to contradict the DMV's reason for terminating her. Instead, her proffered evidence suggests her employer's termination decision was based on an incorrect conclusion about her actions, which is not the same as evidence that the DMV engaged in a retaliatory decision. *See Alamo Heights*, 544 S.W.3d at 791–92 ("The issue is whether the employer's perception of the problems–accurate or not–was the real reason for termination."); *Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 818 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) ("When an employer's decision to terminate a claimant's employment is based on the results of an investigation into whether the claimant violated workplace rules, 'evidence that the employer's investigation merely came to an incorrect conclusion does not establish a racial motivation behind an adverse employment decision. *Management does not have to make proper decisions, only non-discriminatory ones*.'") (emphasis added); *see also Lund v. Tex. Health & Human Servs. Comm'n*, No. 04-17-00625-CV, 2019 WL 1049347, at *10 (Tex. App.—San Antonio Mar. 6, 2019, pet. denied) (mem. op.) (holding that the employer's decision to terminate an employee was founded on uncontroverted proof of misconduct

where: (1) the employee did not contest that she improperly accessed records in violation of the employer's policy, and (2) the employee instead attempted to excuse her actions by claiming that, while she accessed records, she did not intend to violate policy). This absence of proof of retaliatory intent due to a workers' compensation claim is especially evident where Bustillos's own statements demonstrated she never harbored any belief that her termination was due to her filing of such claim. She stated, instead, "I believe all of the allegations against me were brought about due to my complaint about favoritism in the office. I feel that this is in retaliation for that complaint since the investigation into my daily work started shortly after."

Furthermore, Kuntz noted that he also had a zero-tolerance policy for all types of fraud and to not have fired Bustillos in light of the evidence presented to him would have been to treat her differently than other employees. And we have held that a legitimate and non-discriminatory reason for termination can be an employer's enforcement of a company policy. *See Santillan v. Wal-Mart Stores, Inc.*, 203 S.W.3d 502, 506 (Tex. App.—El Paso 2006, pet. denied) (holding that the employer provided a legitimate non-discriminatory reason for termination and properly shifted the burden to the employee to produce evidence of a retaliatory motive where the employee did not provide necessary employment documents in a timely manner in violation of the employer's policy and of federal law).

In the absence of Bustillos's showing that the DMV's reasons for termination were pretextual, we now turn to consider whether she otherwise met her burden of establishing a material issue of fact on the causation element—i.e., that she would not have been discharged "but for" the filing of her workers' compensation claim—under the remaining *Continental Coffee*

26

factors. 937 S.W.2d at 451. During this stage of the analysis, "but for" causation is "significantly more difficult to prove than prima facie causation." *Alamo Heights*, 544 S.W.3d at 782.

### i. Decision makers' knowledge of workers' compensation claim

Although it urges this factor alone is not indicative of any retaliatory conduct, the DMV concedes it knew Bustillos had a pending workers' compensation claim at the time it terminated her employment. Consequently, this causation factor weighs in favor of Bustillos.

### ii. Expression of a negative attitude toward the employee's injury

In her own deposition, Bustillos expressly acknowledged that no one at the DMV ever communicated any negative attitude toward her injury. As some evidence of a negative attitude, Bustillos pointed to her own perception of a change in Chesshire's attitude and demeanor once she told him that she was going to see a doctor for her injury. But her own subjective interpretation of Chesshire's attitude is not probative of a negative attitude under this factor. *Cont'l Coffee*, 937 S.W.2d at 451–52 (holding that an employee's "impression" that her employer wanted her back at work instead of at home receiving workers' compensation was no more than the employee's subjective belief or conclusion and did not raise a fact issue under this factor); *Alamo Heights*, 544 S.W.3d at 773 (holding that the employee's subjective belief that her harasser looked at her in a "creepy" manner and was "hitting on her" could not raise a fact issue). Therefore, this factor weighs against Bustillos. *See Armendariz*, 390 S.W.3d at 469 (holding that this factor weighed against the employee where she testified that no one from her employer did or said anything to discourage her from reporting her injury or from filing a workers' compensation claim).

### iii. Employer's failure to adhere to established company policies

Chesshire began the internal investigation into Bustillos's alleged improper transactions and stated he had, at all times, acted according to policy with respect to her subsequent workers' compensation claim. The DMV's notice of possible disciplinary action described the specific ways in which Bustillos allegedly violated its policies and Texas laws. Before making the final decision on termination, Kuntz reviewed all the evidence presented to him, provided Bustillos an opportunity for rebuttal, and consulted with various legal and administrative divisions of the DMV. Furthermore, Kuntz noted he had a zero-tolerance policy for all types of fraud and abstaining from firing Bustillos in light of the evidence presented to him would have been to treat her differently than any other employee.

Bustillos urged in her written response to the notice of possible disciplinary action, and in her deposition, that any improper issuance of permits resulted from the DMV's lack of proper training for her regarding use of VINAssist. She continues to argue here that this lack of training demonstrates the DMV engaged in an activity against policy—specifically, failing to train their employees—and that this factor therefore weighs in her favor. However, the dispositive issue for this factor is not whether an employer ever engaged in any activity against their own policies; rather, we must ask whether an employer terminated an employee against its own policies. *See id.* at 470–71 (assessing this factor through a determination of whether an employer's decision to terminate was in accordance with policy); *Lund*, 2019 WL 1049347, at *9 (holding that the material question under this factor is whether the employer followed its policies, specifically, concerning termination of employment). Because the record indicates the DMV terminated Bustillos for fraudulent activity in violation of both its policies and state law, and because there is

28

no contradicting evidence of that fact, this factor weighs against Bustillos. *See Armendariz*, 390 S.W.3d at 470–71 (holding that this factor weighed against the plaintiff where the record showed that the employee violated an unwritten attendance policy on which the employer relied in terminating the employee and where the employee presented no affirmative evidence contradicting the existence of the policy).

### iv.     Comparison to similarly situated employees

In briefing, Bustillos argues next that she established a genuine issue of material fact on another one of the *Continental Coffee* factors. She argues that a factual issue exists as to whether the agency treated her in a discriminatory manner as compared to Frescas regarding the discipline imposed upon her for her issuance of nineteen permits to salvage vehicles and thirty-five permits to phony VINS.  Bustillos argues that she and Frescas were similarly situated in the sense that, because Bustillos worked under the direct supervision of Frescas, and had received training directly from her, that if questionable permits were issued by Bustillos then this happened "under Frescas's watch." Yet, she further notes there is an absence of summary judgment evidence that Frescas was also disciplined, as was Bustillos, for this deficiency.

However, employees are similarly situated only if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct. *Alamo Heights*, 544 S.W.3d at 791. Admittedly, Bustillos and Frescas shared the same supervisor—Chesshire—who managed the entire Service Center. But that is where their similarities begin and end. While Bustillos was a clerk with a job title of Customer Service Representative III, Frescas was the office coordinator. Bustillos was tasked with providing customer service and processing temporary registration permits for vehicles; Frescas oversaw the work schedules, assignments, and training

for all clerks. Indeed, Bustillos acknowledged that Frescas was her supervisor and that she did not have the same job functions and duties as a clerk. Although there is evidence that Frescas would fill in for other clerks if the office was short-staffed or busy, there was no indication that the assigned duties of Frescas and Bustillos were the same in all material respects. *See Tex. Dep't of Family & Protective Servs. v. Parra*, 503 S.W.3d 646, 672 (Tex. App.—El Paso 2016, pet. denied) (declining to hold that an employee who was a case worker was similarly situated to an investigator where, even though some testimony established that the two jobs were equally important, the employee did not fully show that their circumstances were comparable in all material respects).

Regardless, Bustillos would not be able to satisfy this factor for an even more fundamental reason. Simply, there is no evidence in the record of Frescas or any other similarly situated employee having sustained an injury who thereafter filed a workers' compensation claim. *See Armendariz*, 390 S.W.3d at 469 (holding that this factor weighed against causation where the record lacked evidence showing: (1) any other injured employee; (2) any other employee who filed a workers' compensation claim; (3) any other employee returning to work and continuing to work after the employee reported an injury and filed a workers' compensation claim; or (4) any employee that the plaintiff believed was fired for filing a workers' compensation claim). Therefore, Bustillos has not shown that she faced discriminatory treatment compared to any similarly situated employee, and this factor weighs against her.

**v.      Evidence that the stated reason for the discharge was false**

As discussed, the DMV presented substantial evidence showing the reason for discharging Bustillos was due to her improper issuance of numerous permits for vehicles. This reason was documented in the DMV's notice of possible disciplinary action and its ultimate notice of

30

termination. To address this evidence in favor of the DMV, Bustillos once again points to her statements that she was inadequately trained. She argues that her inadequate training was the cause of any improper issuance of permits, and therefore, the DMV's conclusions about her transactions was proven to be in error, thus allowing this Court to make an inference that those reasons for discharge were false. However, as noted earlier, evidence that an employer's termination decision was based on an incorrect conclusion about an employee's actions is not the same as evidence that the employer engaged in a discriminatory decision. *See Alamo Heights*, 544 S.W.3d at 791–92; *Chandler*, 376 S.W.3d at 818; *Lund*, 2019 WL 1049347, at *10. Therefore, even accepting Bustillos's evidence regarding her lack of training as true, as we must, we are not persuaded by her use of this evidence to buttress an argument that the DMV terminated her employment based on a retaliatory motive.

Bustillos did claim in her written response to the notice of possible disciplinary action that she believed the allegations against her constituted retaliation by the DMV. But her subjective belief alone that the DMV's reason for her termination was false cannot supply a basis for so finding. *See Alamo Heights*, 544 S.W.3d at 792; *Elgaghil*, 45 S.W.3d at 141; *Guerra*, 963 S.W.2d at 950. Perhaps more importantly, and in her own words, Bustillos did not even assert any belief that the retaliation was due to her filing of a workers' compensation claim. Accordingly, we are constrained to find, and do so find, that this factor weighs against Bustillos as well.

Having evaluated the evidence admitted by the trial court bearing on each of the circumstantial evidence factors, we conclude that Bustillos failed to produce evidence on the majority of the *Continental Coffee* factors and has therefore failed in her ultimate burden of

31

establishing a genuine issue of material fact on but-for causation. We hold the DMV's plea to the jurisdiction should have been granted, and the trial court's failure to do so was error.

Accordingly, we sustain the DMV's first issue presented for review.

## D. The trial court's evidentiary rulings

We need not address the DMV's second issue challenging the trial court's order excluding the DMV's additional evidence because we hold that, even without the excluded evidence, the trial court erred in denying the DMV's plea to the jurisdiction.

### III.    CONCLUSION

We reverse the trial court's order denying the DMV's plea to the jurisdiction and render judgment dismissing Bustillos's retaliation claim under chapter 451 of the Texas Labor Code.


                                        GINA M. PALAFOX, Justice
January 25, 2021

Before Rodriguez, C.J., Palafox, J., and McClure, C.J. (Senior Judge)
Rodriguez, C.J., concurring
McClure, C.J. (Senior Judge), sitting by assignment

32